1   Ira Benjamin Katz (CA Bar No. 81007)
        Ikatz@katzlaw.net
2   Law Offices of Ira Benjamin Katz
    A Professional Corporation
3   1925 Century Park East, Suite 1700
    Los Angeles, California 90067
4   Telephone: 310.282.8580

5   Robert A. Weinberg (CA Bar No. 110144)
        Raw@rweinberglaw.com
6   Law Offices of Robert A. Weinberg
    18034 Ventura Boulevard, Suite 511
7   Encino, California 91316
    Telephone: 818.705.3254

8
    Special Litigation Counsel for Plaintiff, Howard M. Ehrenberg, Chapter 7 Trustee
9

10              **UNITED STATES BANKRUPTCY COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

12

| 13 | In re | Case No. 2:15-bk-21624-ER |
| 14 | HARRY ROUSSOS, | Chapter 7 |
| 15 | Debtor. | Jointly Administered With Case: |
| 16 | | Case No. 2:15-bk-21626-ER |
| 17 | | **CHAPTER 7 TRUSTEE'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| 18 | | |
| 19 | In re | Case No. 2:15-bk-21626-ER |
| 20 | THEODOSIOS ROUSSOS, | |
| 21 | Debtor, | |
| 22 | | |

| | |
|---|---|
| HOWARD M. EHRENBERG, Chapter 7 Trustee for the Estates of Harry Roussos and Theodosios Roussos, | Adv. No. 2:15-ap-01404-ER |
| | Adv. No. 2:15-ap-01406-ER |
| Plaintiff, | |
| | DATE:    September 21, 2016 |
| v. | TIME:    10:00 a.m. |
| | PLACE:  Courtroom "1568" |
| HARRY ROUSSOS; THEODOSIOS ROUSSOS; O.F. ENTERPRISES, L.P., a California limited partnership; LIRO, INC., a California corporation; S.M.B. INVESTORS ASSOCIATES, L.P., a California limited partnership; S.M.B. MANAGEMENT, INC., a California corporation; CHRISTINE ROUSSOS; PAULA ROUSSOS; CHASE BANK N.A.; ONEWEST BANK N.A.; and DOES 1 through 50, | |
| Defendants. | |

1

# TABLE OF CONTENTS

**Page**

I. PREFATORY STATEMENT ...............................................................1

II. SUMMARY OF ARGUMENT AND RELEVANT BACKGROUND ......................................1

III. DEFENDANT CANNOT ELUDE CULPABILITY SIMPLY BY REPACKAGING THE PREVIOUSLY UNSUCCESSFUL RULE 12(b)(6) MOTIONS  AS A RULE 12(c) MOTION ...............................................................5

IV. THE MOTION MUST BE DENIED SINCE THE TRUSTEE POSSESSES THE REQUISITE STANDING AND *IN PARI DELICTO* IS NOT A DEFENSE  TO POST-PETITION FRAUD ...............................................................6

    A.    Since The Trustee's Claims Are Post-Petition Claims Arising Under 11 U.S.C. § 541(a)(7), The *In Pari Delicto* Defense Has No Applicability To This Case ...............................................................7

    B.    Defendant Relies Upon Inapplicable Case Law Relating To Pre-Petition Claims...............................................................16

    C.    Defendant's Attempt To Apply The *In Pari Delicto* Doctrine To Post-Petition Claims Relies Upon A Misreading Of The Bankruptcy Code...................16

    D.    The Inapplicability Of The Wagoner Rule Does Not Preserve The *In  Pari Delicto* Defense ...............................................................18

    E.    Equity Precludes Defendant From Invoking The *In Pari Delicto Defense*.............18

    F.    The *In Pari Delicto* Defense Cannot Apply Against Alter Ego Parties...................20

V. THE MOTION MUST BE DENIED SINCE THE TRUSTEE  ADEQUATELY ALLEGES DAMAGES ...............................................................21

    A.    The Sale Order Did Not Conclusively Determine That The Estates Lacked Equity In The Properties ...............................................................21

    B.    The Trustee's First Four Claims Are Not Barred Since There Is No Binding Determination That They Were Sufficiently Marketed And Were Over-Encumbered...............................................................27

    C.    The Defendant Cannot Escape Liability Due To The Fraud Perpetrated On The Presiding Court ...............................................................32

VI. PLAINTIFF SHOULD BE PERMITTED TO AMEND THE COMPLAINT IF THE COURT FINDS THAT ANY CLAIM FOR RELIEF IS NOT ADEQUATELY PLED ...............................................................33

VII. CONCLUSION...............................................................34

# TABLE OF AUTHORITIES

**Page**

## CASES

Anand v. CITIC Corp. (In re Intermagnetics Am., Inc.),
    926 F.2d 912 (9th Cir. 1991) .................................................................. 22, 30, 31

Angelov v. Wilshire Bancorp, Inc.,
    331 Fed. Appx. 471 (9th Cir. 2009) ....................................................... 33

Aoude v. Mobile Oil Corp.,
    892 F.2d 1115 (1st Cir. 1989) ................................................................ 30

Appling v. State Farm Mut. Auto. Ins. Co.,
    340 F.3d 769 (9th Cir. 2003) .................................................................. 30

Arthur v. Davis,
    126 Cal. App. 3d 684, 178 Cal. Rptr. 920 (Cal. Ct. App. 1981) ........................ 18

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .............................. 5

Balistreri v. Pacifica Police Department,
    901 F.2d 696 (9th Cir. 1990) .................................................................. 5

Bateman Eichler, Hill Richards, Inc. v. Berner (Bateman Eichler),
    472 U.S. 299, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985) ............................. 7

Battle Ground Plaza, LLC v. Estate of Jessen (In re Ray),
    2008 Bankr. LEXIS 4758 (9th Cir. BAP 2008) ......................................... 25, 26

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................. 5

Broam v. Bogan,
    320 F.3d 1023 (9th Cir. 2003) ................................................................ 33

CarrAmerica Realty Corp. v. Nvidia Corp.,
    302 Fed.Appx. 514 (9th Cir. 2008) ......................................................... 3

Casey v. U.S. Bank Nat. Assn.,
    127 Cal. App. 4th 1138 (2005) ............................................................... 16

Chambers v. NASCO, Inc.,
    501 U.S. 32, 111 S. Ct. 2123; 115 L. Ed. 2d 27 (1991) ............................... 27

Chavez v. United States,
    683 F.3d 1102 (9th Cir. 2012) ................................................................ 5

Dery v. Citizen's Ins. Co. of Am. (Light),
    23 B.R. 482 (Bankr. E.D. Mich. 1982) .................................................... 10

Dixon v. C.I.R.,
        316 F.3d 1041 (9th Cir. 2003) ............................................................................ 27, 28

Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,
        890 F.2d 165 (9th Cir. 1989) .................................................................................. 18

Erricola v. Guadette (In re Guadette),
        241 B.R. 491 (Bankr. D. N.H. 1999) ...................................................................... 16

Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators, Inc.),
        926 F.2d 1458 (5th Cir. 1991) ................................................................................ 22

Gekas v. Pipin (In re Met-L-Wood Corp.),
        861 F.2d 1012 (7th Cir. 1988) .................................................................. 21, 22, 24

Giacometti v. Arton Berm, Ltd. (In re Sukamto Sia),
        349 B.R. 640 (Bankr. D. Hawaii 2006) ...................................................... 11, 12, 17

Gordon v. Harman (In re Harman),
        529 B.R. 352 (Bankr. N.D. Ga. 2015) ............................................................... 19, 20

Grubin v. Rattet (In re Food Mgmt. Group, LLC),
        380 B.R. 677 (Bankr. S.D.N.Y. 2008) ............................................................... 13, 14

Hazel-Atlas Glass Co. v. Hartford-Empire Co.,
        322 U.S. 238, 64 S. Ct. 997, 88 L. Ed. 1250 (1944) ............................................. 27

In re Blumer,
        95 B.R. 143 (9th Cir. BAP 1988) .............................................................................. 3

In re Caldor Corp.,
        303 F.3d 161 (2d Cir. 2002) ................................................................................... 30

In re Chandler,
        290 F. 988 (E.D. Pa. 1923) ...................................................................................... 6

In re CITX Corp., Inc.,
        2005 U.S. Dist. LEXIS 11374, 2005 WL 1388963, *11 (E.D. Pa. June 7, 2005) ............... 6

In re Family Christian, LLC,
        533 B.R. 600 (Bankr. W.D. Mich. 2015) ............................................................ 22, 24

In re Hedged Investment Assocs., Inc.,
        84 F.3d 1281 (10th Cir. 1996) .................................................................................. 9

In re Hi Tech Fleet Serv., Inc.,
        339 B.R. 428 (Bankr. E.D. Mich. 2006) ................................................................ 21

In re Plaza Mortgage & Fin. Corp.,
        187 B.R. 37 (Bankr. N.D. Ga. 1995) ...................................................................... 20

In re R & R Associates of Hampton,
        402 F.3d 257 (1st Cir. 2005) .................................................................................. 15

In re Roussos,
    541 B.R. 721 (Bankr. C.D. Cal. 2015) ........................................................... 4, 18

In re Senior Cottages of Am., LLC,
    482 F.3d 997 (8th Cir. 2007) .................................................................................. 4

In re Smith,
    170 B.R. 111 (Bankr. N.D. Ohio 1994) ................................................................ 3

In re Thomas,
    474 Fed. Appx. 500 (9th Cir. 2012) .................................................................... 25

In re Tidal Const. Co., Inc.,
    446 B.R. 620 (Bankr. S.D. Ga. 2009) ................................................................ 23

In re Transcon. Energy Corp.,
    683 F.2d 326 (9th Cir. 1982) .............................................................................. 25

In re W.A. Mallory Co., Inc.,
    214 B.R. 834 (Bankr. E.D. Va. 1997) ................................................................ 23

Island Creek Coal Co. v. Lake Shore, Inc.,
    832 F.2d 274 (4th Cir. 1987) .............................................................................. 33

J.T.R. Corp. v. Harford Mutual Ins. Co. (J.T.R.),
    958 F.2d 602 (4th Cir. 1992) ........................................................................ 10, 11

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
    304 F.3d 829 (9th Cir. 2002) ........................................................................ 18, 19

Keniston v. Roberts,
    717 F.2d 1295 (9th Cir. 1983) .............................................................................. 5

Levander v. Prober (In re Levander),
    180 F.3d 1114 (9th Cir. 1999) ...................................................................... 23, 30

Logan v. JV Real Estate Servs. (In re Bogdan),
    414 F.3d 507 (4th Cir. 2005) ................................................................................ 6

Lopez v. Smith,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................ 33

McNamara v. PFS (In re Pers. & Bus. Ins. Agency),
    334 F.3d 239 (3d Cir. 2003) ................................................................................. 6

Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,
    267 F.3d 340 (3d Cir. 2001) ........................................................................ passim

Pinter v. Dahl,
    486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988) .................................. 7

Republic Molding Corp. v. B.W. Photo Utils.,
    319 F.2d 347 (9th Cir. 1963) .............................................................................. 19

iv

Rickel & Associates v. Smith (In re Rickel & Associates, Inc.),
   272 B.R. 74 (Bankr. S.D.N.Y. 2002) ............................................................ 23

Rosen v. Gemini Title & Escrow, LLC (In re Hoang),
   449 B.R. 850 (Bankr. D. Md. 2011) ............................................................ 14

Security Warehousing Co. v. Hand,
   206 U.S. 415, 27 S. Ct. 720, 51 L. Ed. 1117 (1907) ...................................... 6

Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc.,
   621 F.3d 981 (9th Cir. 2010) ...................................................................... 18

Shearson Lehman Hutton, Inc. v. Wagoner,
   944 F.2d 114 (2d Cir. 1991) ................................................................ passim

Simantob v. Claims Prosecutor, LLC (In re Lahijani),
   325 B.R. 282 (9th Cir. BAP 2005) .............................................................. 23

Taylor v. Lake (In re Cada Investments, Inc.),
   664 F.2d 1158 (9th Cir. 1981) .................................................................... 25

Texaco, Inc. v. Ponsoldt,
   939 F.2d 794 (9th Cir. 1991) ...................................................................... 32

Thompson v. Fairbanks,
   196 U.S. 516, 25 S. Ct. 306, 49 L. Ed. 577 (1905) ........................................ 6

Uecker v. Wells Fargo Capital Fin., LLC (In re Mortgage Fund '08 LLC),
   527 B.R. 351 (N.D. Cal. 2015) .................................................................... 16

Unigard Mut. Ins. Co. v. O'Dwyer (Feiereisen),
   56 B.R. 167 (Bankr. D. Ore. 1985) .............................................................. 10

United States v. City of Redwood City,
   640 F.2d 963 (9th Cir. 1981) ...................................................................... 33

United States v. Ron Pair Enters.,
   489 U.S. 235, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) ............................ 30

United States v. Stonehill,
   660 F.3d 415 (9th Cir. 2011) ................................................................ 23, 28

United States v. Webb,
   655 F.2d 977 (9th Cir. 1981) ...................................................................... 32

Universal Oil Products Co. v. Root Ref. Co.,
   328 U.S. 575, 66 S. Ct. 1176, 90 L. Ed. 1447 (1946) .................................. 22

USACM Liquidating Trust v. Deloitte & Touche, LLP,
   764 F. Supp. 2d 1210 (D. Nev. 2011) .................................................... 16, 17

Valerio v. Boise Cascade Corp.,
   80 F.R.D. 626 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981) .............. 22

Watson v. Weeks,
    436 F.3d 1152 (9th Cir. 2006) ........................................................................ 5

Winget v. JP Morgan Chase Bank, N.A.,
    537 F.3d 565 (6th Cir. 2008) ................................................................... 24, 25

Zartman v. First Nat'l Bank of Waterloo,
    216 U.S. 134, 30 S. Ct. 368, 54 L. Ed. 418 (1910) ........................................ 6

Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321,91 S. Ct. 795, 28 L. Ed. 2d
    77 (1971) ........................................................................................................ 32

**STATUTES**

11 U.S.C. § 1112 ...................................................................................................... 17

11 U.S.C. § 1208 ...................................................................................................... 17

11 U.S.C. § 1307 ...................................................................................................... 17

11 U.S.C. § 323(b) .................................................................................................... 12

11 U.S.C. § 348 ........................................................................................................ 17

11 U.S.C. § 348(b) .................................................................................................... 17

11 U.S.C. § 348(d) .................................................................................................... 17

11 U.S.C. § 348 ........................................................................................................ 17

11 U.S.C. § 348(b) .................................................................................................... 17

11 U.S.C. § 348(d) .................................................................................................... 17

11 U.S.C. § 363 ................................................................................................... 23, 31

11 U.S.C. § 363(b) .................................................................................................... 23

11 U.S.C. § 541 ................................................................................................. passim

11 U.S.C. § 541(a) .................................................................................................... 31

11 U.S.C. § 541(a)(1) ......................................................................................... passim

11 U.S.C. § 541(a)(7) ................................................................................. 9, 10, 13, 16

11 U.S.C. § 542 ........................................................................................................ 17

11 U.S.C. § 542(a) .................................................................................................... 31

11 U.S.C. § 544(b) .................................................................................................... 31

11 U.S.C. § 547 ........................................................................................................ 31

11 U.S.C. § 548 ........................................................................................................... 31

11 U.S.C. § 549 ........................................................................................................... 31

11 U.S.C. § 701(a) ....................................................................................................... 17

11 U.S.C. § 706 ........................................................................................................... 17

11 U.S.C. § 727(a)(10) ................................................................................................ 17

11 U.S.C. § 727(b) ...................................................................................................... 17

California Civil Code § 3517 ...................................................................................... 19

California Civil Code § 3518 ...................................................................................... 31


**OTHER AUTHORITIES**

3 Collier on Bankruptcy ¶ 323.03[3][a] (16th ed. 2010) ........................................ 8

H.R.Rep. No. 95B595, p. 367 (1977) ........................................................................ 31


**RULES**

Federal Rule of Bankruptcy Procedure 7015(a)(2) .................................................... 32

Federal Rules of Civil Procedure 12(b)(6) ........................................................... passim

Federal Rules of Civil Procedure 12(c) ............................................................... 2, 4, 20

Federal Rules of Civil Procedure 56 ............................................................................ 3

Federal Rules of Civil Procedure 60 ................................................................... 21, 30

Federal Rules of Civil Procedure 60(b) ......................................................... 21, 22, 25

Federal Rules of Civil Procedure 60(d) ..................................................................... 27

Federal Rules of Civil Procedure 60(d)(3) .......................................................... passim

Federal Rules of Civil Procedure 6009 ...................................................................... 12

Federal Rules of Evidence 201 .................................................................................... 3

1    Howard M. Ehrenberg ("Plaintiff" or the "Trustee"), the duly appointed, qualified,

2  and acting chapter 7 trustee for the estate of the debtor Harry Roussos ("Harry") and the estate of

3  the debtor Theodosios Roussos (the "Defendant" or "Theodosios" and together with Harry, the

4  "Roussos Brothers" or the "Debtors") hereby submits his "Chapter 7 Trustee's Opposition to

5  Defendant's Motion for Judgment on the Pleadings" (the "Opposition") in response to the "Notice

6  of Motion and Motion for Judgment on the Pleadings" (the "Motion"), filed by Theodosios, and

7  represents as follows:[1]

### I.

### PREFATORY STATEMENT

10    Theodosios' Motion is based on the false premise that, as a matter of law, a post-

11  petition sale procured by fraud is completely immune from attack.  However, rather than rearguing

12  that the Trustee's Rule 60(d)(3) claim is time-barred or was abandoned, Theodosios now argues

13  that the Trustee has no standing to remediate the Roussos Brothers' manifest fraud due to the

14  doctrine of *in pari delicto*.  Theodosios also contends that the doctrines of res judicata and

15  collateral estoppel bar the Trustee from vacating the Sale Order since an order procured by fraud is

16  insulated from attack provided no party has appealed the order.  Similar to their prior challenges to

17  the Trustee's Complaint, this Motion is bereft of legal authority for any of the outlandish defenses

18  Theodosios claims stand in the Trustee's way of nullifying and reversing the fraud committed in

19  1994.  And similar to each of the motions before it, this Motion must be denied.

### II.

### SUMMARY OF ARGUMENT AND RELEVANT BACKGROUND

22    As this Court has come to learn, the Complaint has its genesis in a scheme

23  concocted by Theodosios and Harry in 1994 to shield two extremely valuable apartment buildings

24  located at 2727-2741 Abbot Kinney Boulevard, Venice, California (the "Abbot Kinney Property")

---

[1] As noted in the Motion, the memorandum of points and authorities in support of the Motion is
identical to the memorandum of points and authorities in support of the separate motion filed by
O.F. Enterprises, L.P. ("O.F."), Liro, Inc. ("Liro"), S.M.B. Investors Associates, L.P. ("S.M.B."),
and S.M.B. Management, Inc. ("S.M.B.M.") (O.F., Liro, S.M.B., and S.M.B.M. are collectively
referred to as the "Conspirators" or the "Entity Defendants").

1

1    and 153 San Vicente Boulevard, Santa Monica, California (the "San Vicente Property" and

2    together with the Abbot Kinney Property, the "Properties") from their creditors.[2]  Although the

3    sales were presented to the bankruptcy court as arms-length sales to non-insiders, the facts

4    uncovered to date (corroborated through written and oral discovery), now present a vastly different

5    story, one shrouded in deception and fraud.[3]

6              For the past twenty-two years, the Debtors, their spouses, and the Entity

7    Defendants have profited from their desecration of the integrity of the bankruptcy court process.

8    In fact, their fraud on the court was a continuation of their pre-bankruptcy, multi-year malicious,

9    oppressive, and fraudulent actions towards their then partners, the late August Michaelides

10   ("August"), and his wife (now widow), Lula Michaelides ("Lula"), in connection with their

11   operation of the Properties.  Their pre-bankruptcy unlawful conduct resulted in the state court

12   entering judgment in favor of Lula and against the Debtors for compensatory and punitive

13   damages in excess of $1,200,000 and quieting Lula's title to a 10% interest in the San Vicente

14   Property and to a 33 1/3 % interest in the Abbot Kinney Property which monetary judgment was

15   determined by the bankruptcy court in Theodosios and Harry's respective bankruptcy cases to be

16   non-dischargeable.

---

18   [2] The fraud is alleged to have been committed by all named defendants with the exception of the
     pre-sale lenders, JP Morgan Chase Bank N.A. and OneWest Bank, N.A., now known as CIT
19   Bank, N.A. (collectively, the "Lenders").  At the present time, the Trustee is not alleging wrongful
     conduct by the Lenders.  Accordingly, all references to wrongful conduct or fraud by defendants,
20   unless otherwise stated, refer only to the non-lender defendants.

21   [3] Although not the proper procedural vehicle, Theodosios is once again attempting to obtain
     preliminary factual findings, or at least impress upon the Court his one-sided view of the case,
22   through the Motion.  For example, Theodosios references deposition testimony without
     introducing the deposition transcripts.  Theodosios references tax returns and loan applications
23   without introducing those documents.  All the while Theodosios proclaims that the Trustee's
     version of the facts is "based upon bad deductive logic and inaccurate speculation."  The Trustee
24   looks forward to introducing the mountain of evidence demonstrating otherwise.  In any event, as
     this Court surely knows, a Rule 12(c) motion, similar to a Rule 12(b)(6) motion, is neither the time
25   nor the place for an adjudication of material issues of fact, which remain in dispute.  The Trustee
     is not inclined to engage in a lengthy factual discourse with Theodosios through this Opposition,
26   and will await trial before seeking factual findings.  Needless to say, as noted, the Trustee disputes
     the superfluous and mistaken interpretations given to alleged testimony and the various
27   agreements and events referenced in the Motion.

28

1    The Trustee now seeks to remedy the monumental fraud perpetrated on the court in

2    1994 through Rule 60(d)(3) of the Federal Rules of Civil Procedure.

3    Curiously, in light of his concerted effort to portray himself as an innocent party,

4    there is no declaration supporting his denial that a fraud was committed on the court or that any of

5    the other material allegations of the Trustee's Complaint are false.[4]  Rather, consistent with his

6    prior conduct, the Motion is laden with intentional distortions of the facts, is based on fundamental

7    misunderstandings of applicable law, and contains assertions of matters outside the Complaint

8    without complying with Rule 56 of the Federal Rules of Civil Procedure.[5]  Theodosios' goal (as it

9    was in 1994) is to mislead the Court into dismissing the Complaint, without cause, based on

10    illogical and unsupported legal theories.

11    In fact, this Court already rejected the argument that the Trustee lacks standing to

12    pursue fraud claims.  As the Court noted:

13        Finally, the Court rejects Defendants' argument that the Trustee

14        lacks standing to pursue the fraud and breach of fiduciary claims.

15        Defendants invoke the Wagoner Rule, a Second Circuit doctrine

16        holding that the Trustee lacks standing to assert claims predicated

17        upon injury to creditors.  In <u>CarrAmerica Realty Corp. v. Nvidia</u>

---

19    [4] Since the date these cases were reopened, the Roussos Brothers, their spouses, and the Entity
20    Defendants have never submitted even a single declaration under penalty of perjury denying the
      allegations in the Complaint.

21    [5] In support of his Motion, Theodosios relies on the request for judicial notice filed by the Entity
22    Defendants in support of their separate motion, attached to which were numerous bankruptcy court
      pleadings.  As this Court knows, pursuant to Rule 201 of the Federal Rules of Evidence, judicial
23    notice of a judicially noticed fact must be one not subject to reasonable dispute in that it is either
      (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate
24    and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  A
      high degree of indisputability is an essential prerequisite for adjudicative facts to be judicially
25    noticed.  As such, the Court is not permitted to take judicial notice of the truth of the contents of
      the exhibits proffered by Theodosios.  See <u>In re Blumer</u>, 95 B.R. 143 (9th Cir. BAP 1988) (a
26    deposition was not otherwise admissible because it was taken in connection with another matter to
      which a creditor was not a party and did not have notice); <u>In re Smith</u>, 170 B.R. 111 (Bankr. N.D.
27    Ohio 1994) (resort to judicial notice does not permit bankruptcy court to accept truth of assertions
      by counsel contained within court's file).

28

3

1    Corp., 302 Fed.Appx. 514, 517 (9th Cir. 2008), as amended (Jan.

2    22, 2009), as amended (Mar. 10, 2009), the Ninth Circuit declined

3    to follow Wagoner:

4            The Creditors argue that Trustee standing is barred

5            under Shearson Lehman Hutton, Inc. v. Wagoner,

6            944 F.2d 114, 120 (2d Cir. 1991) ('A claim against a

7            third party for defrauding a corporation with the

8            cooperation of management accrues to creditors, not

9            to the guilty corporation.').  However, the Wagoner

10           rule has been much criticized and we decline to

11           follow it.  See In re Senior Cottages of Am., LLC,

12           482 F.3d 997, 1003–04 (8th Cir. 2007) (listing

13           authorities rejecting Wagoner and concluding that

14           the in pari delicto defense has nothing to do with

15           trustee standing).

16   In re Roussos, 541 B.R. 721 (Bankr. C.D. Cal. 2015).

17           Where, as here, the Complaint explicitly alleges that the Roussos Brothers, together

18   with their spouses, and the Entity Defendants, engaged in fraudulent conduct post-petition with

19   respect to the very matters as to which Theodosios is asserting equitable defenses, those defenses

20   (especially the doctrine of in pari delicto) are disallowed.  In fact, not a single case cited by

21   Theodosios precludes the Trustee from pursuing Rule 60(d)(3) to vacate a sale order procured by

22   post-petition fraud.

23           As will be shown by the remainder of this Opposition, there is no basis for

24   judgment of the pleadings with respect to any of the Complaint's four remaining claims for relief.

25   Consequently, the Motion must be denied.

26

27

28

4

1

2                                           **III.**

3        **DEFENDANT CANNOT ELUDE CULPABILITY SIMPLY BY REPACKAGING**

4            **THE PREVIOUSLY UNSUCCESSFUL RULE 12(b)(6) MOTIONS**

5                              **AS A RULE 12(c) MOTION**

6              Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are

7    closed - but early enough not to delay trial - a party may move for judgment on the pleadings."

8    Judgment on the pleadings only is appropriate when a complaint does not plead "enough facts to

9    state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570,

10   127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff

11   pleads factual content that allows the court to draw the reasonable inference that the defendant is

12   liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.

13   Ed. 2d 868 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks

14   for more than a sheer possibility that a defendant has acted unlawfully." Id.

15             As Theodosios admits, the "[a]nalysis under Rule 12(c) is substantially identical to

16   analysis under Rule 12(b)(6)."  Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012).  A

17   Rule 12(b)(6) motion to dismiss may be based on either the lack of a cognizable legal theory or the

18   absence of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police

19   Department, 901 F.2d 696, 699 (9th Cir. 1990).  However, material allegations are taken as

20   admitted and the complaint is construed in the plaintiff's favor.  Keniston v. Roberts, 717 F.2d

21   1295 (9th Cir. 1983).  In other words, a court will accept "as true all well-pleaded facts in the

22   complaint and construe them in the light most favorable to the non-moving party."  Watson v.

23   Weeks, 436 F.3d 1152, 1157 (9th Cir. 2006).

24             As this Court knows, the Roussos Brothers and their clan, along with the Entity

25   Defendants, filed not one, but two prior motions seeking dismissal of the Complaint under Rule

26   12(b)(6).  The Roussos Brothers also filed a motion to compel the abandonment of the Trustee's

27   claims and they twice opposed the Trustee's motion to enjoin a pending arbitration action on the

28   grounds that no injunction could be entered since the Trustee failed to state a claim for relief under

                                                 5

1    Rule 60(d)(3), among other claims.[6]  In each of those motions, much of the same cases littered

2    throughout this Motion formed the basis of the Debtors' oft-rejected arguments.  This Motion,

3    which, mind-bogglingly, is the at least the sixth *de facto* Rule 12(b)(6) motion, must suffer a fate

4    similar to those motions which preceded it - a swift denial.

**IV.**

**THE MOTION MUST BE DENIED SINCE THE TRUSTEE POSSESSES THE**

**REQUISITE STANDING AND *IN PARI DELICTO* IS NOT A DEFENSE**

**TO POST-PETITION FRAUD**

9    A trustee "stands in the shoes of the bankrupt, and the property which comes into

10    his hands as assets is subject to all the equities impressed upon it in the hands of the bankrupt."  In

11    re Chandler, 290 F. 988, 991 (E.D. Pa. 1923) (citing Security Warehousing Co. v. Hand, 206 U.S.

12    415, 27 S. Ct. 720, 51 L. Ed. 1117 (1907); Zartman v. First Nat'l Bank of Waterloo, 216 U.S. 134,

13    30 S. Ct. 368, 54 L. Ed. 418 (1910);  Thompson v. Fairbanks, 196 U.S. 516, 25 S. Ct. 306, 49 L.

14    Ed. 577 (1905) (other citation omitted)).  See also Official Comm. of Unsecured Creditors v. R.F.

15    Lafferty & Co., 267 F.3d 340 (3d Cir. 2001).  Commonly, because a trustee may take no rights

16    greater than the debtor had *on the petition date* under Section 541 of the Code, he may not use his

17    status to insulate himself from the debtor's pre-petition wrongdoing and any applicable defenses

18    must be applied *as of the petition date* without regard to post-petition events.  Id., at 356-58.

19    However, a court may consider post-petition events to preclude the application of the *in pari*

20    *delicto* defense when a trustee sues based upon claims that only arose as a result of the bankruptcy,

21    such as, arguably, all of a trustee's avoidance powers and other similar claims arising under

22    Chapter 5.  See McNamara v. PFS (In re Pers. & Bus. Ins. Agency), 334 F.3d 239, 246-47 (3d Cir.

23    2003) (where the issue at hand was "whether a court may consider post-petition events, in this case

---

[6] Just recently, the District Court affirmed this Court's order enjoining the pending arbitration action.  In their appellate briefs, Theodosios and his wife, Paula, argued that the Complaint must be dismissed due to the Trustee's failure to state a cognizable claim for relief.  The District Court disagreed.  Therefore, on multiple occasions, the Roussos Brothers have argued that the Trustee cannot undo the fraud perpetrated in 1994.  Two courts have rejected the unsupported assertion that the Trustee cannot state a Rule 60(d)(3) claim as a matter of law, and there is nothing new in the Motion altering those conclusions.

1  the appointment of the trustee, in actions based on a trustee's avoiding powers"); see also In re

2  CITX Corp., Inc., 2005 U.S. Dist. LEXIS 11374, 2005 WL 1388963, *11 (E.D. Pa. June 7, 2005)

3  (prohibiting the court from considering post-petition events, such as the appointment of a trustee,

4  for actions pursued on behalf of the estate under Section 541, but allowing the consideration of

5  post-petition events for actions brought by the trustee pursuant to its avoidance powers).

6          In this regard, standing is different from the *in pari delicto* defense.  See Logan v.

7  JV Real Estate Servs. (In re Bogdan), 414 F.3d 507, 514 (4th Cir. 2005), cert. denied, 546 U.S.

8  1093 (2006) (district court held that trustee lacked standing due to *in pari delicto*, however, Fourth

9  Circuit reversed, concluding that trustee had standing to assert claims on behalf of creditors of

10  bankruptcy estate).  Thus, standing is a separate issue from whether the defense of *in pari delicto*

11  applies to a trustee.  Id., at 518, n.2 (King, J., dissenting).

12          There is no question that, in this case, the Trustee has the requisite standing to

13  prosecute each of the remaining four claims for relief of the Trustee's Complaint and *in pari*

14  *delicto* cannot be used to shield the Debtors, their spouses, and the Entity Defendants from their

15  post-petition fraud.

16      **A.**     **Since The Trustee's Claims Are Post-Petition Claims Arising Under 11**

17               **U.S.C. § 541(a)(7), The *In Pari Delicto* Defense Has No Applicability To**

18               **This Case**

19          "*In pari delicto potior est conditio defendantis*" translates to mean "[i]n a case of

20  equal or mutual fault ... the position of the [defending] party ... is the better one."  Bateman

21  Eichler, Hill Richards, Inc. v. Berner (Bateman Eichler), 472 U.S. 299, 306, 105 S. Ct. 2622, 86 L.

22  Ed. 2d 215 (1985).  "The doctrine of *in pari delicto* provides that a plaintiff may not assert a claim

23  against a defendant if the plaintiff bears fault for the claim."  Lafferty, 267 F.3d at 354.  "The

24  defense is grounded on two premises:  first, that courts should not lend their good offices to

25  mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted

26  wrongdoer is an effective means of deterring illegality."  Bateman Eichler, 472 U.S. at 306-307

27  (citations omitted).

28          The Supreme Court focused the application of the defense to actions where (i) the

7

1  plaintiff bears at least substantially equal responsibility for the wrongdoings, and (ii) preclusion of

2  the suit would not interfere with enforcement of statutes and protection of the public.  Id., at 311

3  (discussing the application of *in pari delicto* in federal security law context).  *In pari delicto* is an

4  equitable defense.  Pinter v. Dahl, 486 U.S. 622, 632, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988).

5  It is governed by federal law principles when applied to federal causes of action and state law

6  principles when applied to state law causes of action.  See Lafferty, 267 F.3d at 361 ("While

7  bankruptcy law mandates that the trustee step into the shoes of the debtor when asserting causes of

8  action, state law generally provides the substantive law governing imputation for state law

9  claims.").

10       As Theodosios points out, the application of *in pari delicto* doctrine to claims by a

11  bankruptcy trustee grounded entirely in a debtor's *pre-petition* activities seems fairly well-settled.

12  The doctrine is often applied to bar claims of a bankruptcy trustee against third parties.  The

13  rationale for the application of the doctrine in such circumstances is explained in length in

14  Lafferty.  Id., at 354.  Such actions are property of the estate pursuant to 11 U.S.C. § 541, which

15  provides that the bankruptcy estate "is comprised of . . . all legal and equitable interest of the

16  debtor as of the commencement of the case."  11 U.S.C. § 541(a)(1).  "[T]he trustee stands in the

17  shoes of the debtor and can assert only those causes of action possessed by the debtor."  3 Collier

18  on Bankruptcy ¶ 323.03[3][a] (16th ed. 2010).  Consequently, the trustee is subject to the same

19  defenses a defendant could assert if the action had been brought by the debtor.  As explained by

20  the Tenth Circuit Court of Appeals:

21       We emphasize § 541(a)(1) limits estate property to the debtor's

22       interests "as of the commencement of the case."  This phrase

23       places both temporal and qualitative limitations on the reach of the

24       bankruptcy estate.  In a temporal sense, it establishes a clear-cut

25       date after which property acquired by the debtor will normally not

26       become property of the bankruptcy estate.  In a qualitative sense,

27       the phrase establishes the estate's rights as no stronger than they

28       were when actually held by the debtor.  Congress intended the

1  trustee to stand in the shoes of the debtor and "take no greater

2  rights than the debtor himself had."  Therefore, to the extent [that

3  the trustee] must rely on 11 U.S.C. § 541 for his standing in this

4  case, he may not use his status as trustee to insulate the partnership

5  from . . . wrongdoing . . .

6  *                    *                    *                    *

7  Neither the text of the [Bankruptcy] Code nor its legislative history

8  suggests any exceptions to the principle that the strength of an

9  estate's cause of action is measured by how it stood "as of

10  commencement of the case."

11  In re Hedged Investment Assocs., Inc., 84 F.3d 1281,1285-86 (10th Cir. 1996).

12          Here, there never has been any dispute that the Trustee's claims against Theodosios

13  and Harry are based on their *post-petition* fraudulent activities.  While Theodosios cites numerous

14  cases that address the application of *in pari delicto* to actions that arise pre-petition, they cite no

15  cases that address the application of the doctrine to claims against debtors and third parties based

16  on their involvement with *post-petition* misconduct and fraud orchestrated by a debtor in

17  possession.  Conversely, the authorities upon which the Trustee relies (discussed below) must

18  once again lead the Court to conclude that the Roussos Brothers' misconduct cannot be imputed to

19  the Trustee under the *in pari delicto* doctrine in a manner which will prevent the Trustee from

20  using Rule 60(d)(3) to undo the fraud on the court.

21          Theodosios notes that, aside from avoidance actions, the Trustee can generally only

22  bring actions arising under Section 541 of the Code.  Section 541, which defines property of the

23  estate, has multiple subsections.  Theodosios appears fixated solely on Section 541(a)(1), which

24  defines property of the estate as including "all legal or equitable interests of the debtor in property

25  *as of the commencement of the case*."  11 U.S.C § 541(a)(1) (emphasis added).  By definition, this

26  encompasses pre-petition causes of action that pass to the estate after the filing of a bankruptcy

27  petition.  Under this provision, a bankruptcy trustee takes hold of estate claims subject to any

28  already existing defects - including any possible *in pari delicto* defense.  In other words, if, on the

1   petition date, a third party defendant could have raised an *in pari delicto* defense against the

2   plaintiff-debtor in state court, then the trustee is vulnerable to the same defense.

3          This adversary proceeding, however, does not stem from Section 541(a)(1).  It

4   arises under Section 541(a)(7), a separate subsection which defines property of the estate as

5   including "[a]ny interest in property that the estate acquires *after the commencement of the case*."

6   11 U.S.C. § 541(a)(7) (emphasis added).  This is the true basis for the Trustee's claims and the

7   provision upon which the analysis must focus.  Since the Trustee's claims only arose *after* the

8   petition were filed when the Roussos Brothers, together with their spouses and the Entity

9   Defendants, defrauded the presiding court into entering the Sale Order, it is axiomatic that the

10  Trustee's claims did not exist as of the  commencement of the Debtors' cases.  Although the

11  Debtors possessed interests in the Properties when they commenced their chapter 11 cases, it was

12  only after those Properties were sold that the claims arose.  As such, the Trustee's Complaint arises

13  under Section 541(a)(7).

14         While there is no binding Ninth Circuit precedent respecting the application of *in*

15  *pari delicto* to post-petition claims, other courts throughout the country, including circuit courts,

16  have uniformly rejected the defense in this context.

17         For example, in <u>J.T.R. Corp. v. Harford Mutual Ins. Co. (J.T.R.)</u>, 958 F.2d 602 (4th

18  Cir. 1992), the Fourth Circuit held that *post-petition* arson by the principal of the debtor was not

19  attributable to the trustee and did not bar the trustee from recovering on the debtor's fire insurance

20  policy.  In June 1979, J.T.R. Corporation ("J.T.R.") filed for chapter 11 relief through its owner,

21  Joseph Kenny ("Kenny").  J.T.R. operated a bar and grill, which Kenny deliberately destroyed by

22  fire after the petition was filed.  After the fire, a chapter 11 trustee was appointed who sought to

23  recover the fire insurance proceeds for the benefit of the estate.  The bankruptcy court held that

24  Kenny's arson barred recovery by the estate.  The district court reversed.

25         In affirming the district court, the Fourth Circuit considered whether Kenny's arson

26  was attributable to the estate.  The Court first addressed the cases of <u>Dery v. Citizen's Ins. Co. of</u>

27  <u>Am. (Light)</u>, 23 B.R. 482 (Bankr. E.D. Mich. 1982), and <u>Unigard Mut. Ins. Co. v. O'Dwyer</u>

28  <u>(Feiereisen)</u>, 56 B.R. 167 (Bankr. D. Ore. 1985).  In <u>Light</u>, the debtor committed arson *before* the

1  bankruptcy petition was filed.  J.T.R., 958 F.2d at 604.  The court there held that the trustee stands

2  "in the shoes" of the debtor and has no greater rights than those held by the debtor at the time the

3  petition was filed.  The Light court therefore barred recovery.  In Feiereisen, the debtor filed a

4  chapter 7 petition, the case was converted to chapter 11, and was then reconverted to chapter 7.

5  Subsequently, the debtor burned the property.  The Feiereisen court held that the trustee was not

6  barred from recovery because the debtor committed the arson *after* the reconversion to chapter 7

7  and after the trustee was appointed.

8        The Fourth Circuit recognized that J.T.R. fell between Light and Feiereisen -  the

9  arson occurred after the filing of the petition but before the trustee was appointed.  The Court held

10  that the determinative factor is the filing of the petition.  Id., at 605.  In a chapter 11, a debtor in

11  possession is a fiduciary and owes the same duties as a trustee.  The debtor in possession "does not

12  act in his own interests, but rather in the interests of the creditors."  Id.  Thus, Kenny was a "third

13  party to the transaction," and his actions were not attributable to the trustee.  Id.

14        As such, J.T.R. strongly supports the conclusion that the *in pari delicto* doctrine

15  does not bar the Trustee's claims as he asserts claims based on the Debtors', their spouses, and the

16  Entity Defendants' *post-petition* conduct.  The determinative factor here, like in J.T.R., is that the

17  fraud which the Trustee is seeking to redress occurred after the filing of the petitions.  To be sure,

18  in J.T.R., Kenny, the wrongdoer, was the principal of the debtor, while J.T.R. was the debtor in

19  possession.  Here, the Debtors, the alleged wrongdoers, were themselves debtors in possession.

20  But upon the filing of their chapter 11 petitions, the Roussos Brothers wore two hats, that of the

21  debtor and that of the debtor in possession.  On the petition date, the Properties became property

22  of the estate, and the Debtors personally lost all legal and equitable interest in them.  The Debtors

23  became fiduciaries of their estates and were obligated to act in the interests of the creditors.  The

24  Debtors, however, also existed - to use that term - in their personal capacity and separate from

25  their status as debtors in possession.  The Complaint alleges that the Debtors engineered

26  fraudulent sales of the Properties and secreted the Properties and the proceeds for the last twenty-

27  two years to benefit themselves, without regard to their positions as debtors in possession.  Under

28  these facts, which must be accepted as true, *in pari delicto* cannot be used as a defense.

11

1    Giacometti v. Arton Berm, Ltd. (In re Sukamto Sia), 349 B.R. 640 (Bankr. D.

2  Hawaii 2006) also illustrates the frivolity of Theodosios' Motion.  In Giacometti, Sukamto Sia

3  ("Sia") was an individual who filed for chapter 11 relief and served as debtor in possession for

4  approximately two months.  A chapter 11 trustee was then appointed and several months later the

5  case was converted to chapter 7, where the same trustee served as representative of the estate.

6  Throughout the case, Sia committed multiple bad acts, including money laundering, with the

7  alleged assistance of UBS, a Swiss bank, in order to control his assets and to frustrate the

8  bankruptcy trustee in locating those assets.  Id., at 645-646.  Upon discovering Sia's fraudulent

9  scheme, the trustee initiated an action against UBS and certain other parties for, among other

10  things, conspiracy to conceal and misappropriate funds from the estate.  UBS claimed the chapter

11  7 trustee lacked standing to pursue her claim because she was in pari delicto due to the former

12  debtor in possession's wrongful conduct.  Upon a motion to dismiss the trustee's complaint, the

13  court had to analyze whether the trustee was barred by the doctrine of in pari delicto from

14  bringing claims against UBS for allegedly conspiring with Sia in converting property of the estate

15  and concealing and misappropriating property from creditors and the bankruptcy estate.

16    The court held that the trustee's conspiracy claim against UBS could proceed based

17  on post-petition misconduct alleging that UBS assisted the debtor in laundering money while the

18  automatic stay and an injunction was in place.  In discussing the trustee's standing to sue for civil

19  conspiracy, the court noted that the trustee's standing depended on timing.  Id., at 655 ("The timing

20  question is whether the activities of the conspirators occurred pre-bankruptcy or after [the debtor]

21  filed his petition.").  The court further explained that since the debtor was one of the alleged co-

22  conspirators, the doctrine of in pari delicto would prevent pre-bankruptcy claims against the

23  debtor and his co-conspirators from flowing to the estate, and would only belong to individual

24  creditors.  However, the question of the trustee's standing to sue for post-petition misconduct was

25  different.  Here, the court in Giacometti held that,

26    The trustee has standing to sue, because the injury is to the

27    bankruptcy estate.  The property of a chapter 7 bankruptcy estate

28    belongs to the trustee, not the debtor.  If the trustee's conspiracy

12

1          claims are based upon post-petition activities of the conspirators, it

2          does not matter whether or not the debtor is one of the

3          conspirators.  The debtor's post-petition unclean hands do not

4          impair the ability of the trustee in bankruptcy to pursue the debtor

5          and debtor's conspirators. . . . timing - whether the trustee's claims

6          are based upon pre-bankruptcy or post-petition activities of the

7          conspirators - is critical.

8  Id., at 655.

9       In sum, the court found that as to post-petition wrongful conduct, the trustee had

10  standing to sue on behalf of the estate under 11 U.S.C. § 323(b) and Bankruptcy Rule 6009 and *in*

11  *pari delicto* was not a defense that could be successfully used to block the trustee from recovering

12  assets of the estate for creditors.

13       In Grubin v. Rattet (In re Food Mgmt. Group, LLC), 380 B.R. 677 (Bankr.

14  S.D.N.Y. 2008), a case eerily similar to this case, the debtor was a donut shop franchisee owned

15  by the members of a family.  The debtor settled a lawsuit with the franchisor, agreeing that the

16  family would have no further direct or indirect involvement with the shops.  The bankruptcy court

17  then authorized the sale of the debtor's assets through a bidding procedures motion, which the

18  court approved.  The order submitted by defendants included a clause prohibiting any bid

19  submitted by any member of the family.  However, it was later discovered that an entity prepared

20  a bid allegedly in collusion with the family.  After discovering the fraudulent nature of the sale,

21  the trustee commenced an action against numerous defendants, including the law firm involved in

22  obtaining the court-approved sales procedures.  The trustee's adversary complaint asserted the

23  following claims against the law firm defendants: (i) fraudulent concealment, (ii) conspiracy to

24  commit fraudulent concealment, (iii) breach of fiduciary duty, (iv) conspiracy to breach fiduciary

25  duty, (v) negligence, and (vi) fraud on the court.  In commencing the action, the trustee alleged

26  that defendants had knowledge of the family's involvement, but failed to disclose the involvement

27  to the court, and failed to disclose that the entity failed to provide the required certification

28  regarding the absence of involvement by the family.  The defendants filed a Rule 12(b)(6) motion

1   to dismiss the complaint, arguing, as Theodosios argues here, that the *in pari delicto* defense

2   protected them from liability.

3          In short, the court rejected the argument, and held that the trustee had standing to

4   assert the claims included in the complaint because neither the *in pari delicto* doctrine nor the

5   <u>Wagoner</u> rule applied to bar claims based on the *post-petition* conduct alleged in the complaint.

6          Here, as in <u>Rattet</u>, the Trustee is not suing based on a cause of action that belonged

7   solely to the Debtors at the time their estates were created when the chapter 11 petitions were

8   filed.  As noted, a trustee acquires pre-petition claims as property of the estate under Section

9   541(a)(1) subject to whatever infirmities (such as an *in pari delicto* defense) that may have

10  existed.  The claims asserted here are property of the estate under Section 541(a)(7), and it is the

11  post-petition misconduct of the Roussos Brothers, their spouses, the Entity Defendants, and other

12  third-parties that gave rise to the Trustee's claims.  Theodosios seeks to absolve himself from

13  liability for injury to the estate arising from his own alleged misconduct by imputing his and his

14  brother's wrongdoing to the estate.  As <u>Rattet</u> and the other cases discussed earlier teach us, this he

15  cannot do.

16         It is indisputable that throughout this case, the Trustee has alleged that the Roussos

17  Brothers acted in their own interest and adverse to their estates after they filed for chapter 11.

18  Under similar facts, the bankruptcy court in <u>Rosen v. Gemini Title & Escrow, LLC (In re Hoang)</u>,

19  449 B.R. 850 (Bankr. D. Md. 2011) also refused to bar a trustee from seeking to redress a debtor's

20  post-petition fraud via recognition of the *in pari delicto* defense.  In <u>Hoang</u>, the debtor filed a

21  chapter 11 petition, which was converted to chapter 7 three months later.  The chapter 7 trustee

22  discovered that prior to filing bankruptcy, the debtor engaged in a massive asset-concealment

23  scheme and relied on certain defendants (an escrow company and law firm) in carrying out her

24  scheme.  Specifically, the debtor purchased distressed real estate at foreclosure and sold those

25  properties at a profit.  Similar to the Roussos Brothers, she concealed those assets through sham

26  entities and paperless transactions in an effort to impede judgment creditors from executing on any

27  judgments.  The debtor used an escrow company as the settlement company in the purchase and

28  sale of hundreds of properties and used a law firm to shield the profits.

1    As here, the debtor continued her asset-concealment scheme post-petition.  It was

2    the debtor's and defendants' post-petition conduct that served as the basis for the claims in the

3    trustee's complaint in <u>Hoang</u>.  According to the defendants, who filed a Rule 12(b)(6) motion,

4    under the doctrine of *in pari delicto*, the debtor would be barred from recovering for wrongful

5    conduct in which the debtor participated and, therefore, the trustee was also barred from

6    recovering from the defendants.  The <u>Hoang</u> court rightly found that the doctrine of *in pari delicto*

7    did not apply to post-petition actions by a debtor in possession.

8    According to the <u>Hoang</u> court, the trustee established that the claims against the

9    defendants were based on their involvement in the debtor's post-petition misconduct.  While the

10    defendants cited numerous cases that addressed the application of *in pari delicto* to actions that

11    arise *pre-petition*, they cited no cases that addressed the application of the doctrine to claims

12    against third parties based on their involvement with *post-petition* misconduct by a debtor in

13    possession.  The same is true here.

14    Finally, in <u>In re R & R Associates of Hampton</u>, 402 F.3d 257 (1ˢᵗ Cir. 2005), the

15    court held that a chapter 7 trustee could pursue a legal malpractice claim against prior chapter 11

16    counsel.  The debtor was a partnership and its sole asset consisted of real estate in New

17    Hampshire.  Prior to filing chapter 11, the debtor's partners and the defendant law firm allegedly

18    colluded in hiding assets of debtor's principals, who provided personal guarantees on debtor's

19    loans.  The defendants also failed to disclose their ongoing legal relationship with the debtor's

20    partners in the chapter 11 retention application.  The case later converted to chapter 7 and a trustee

21    was appointed.  While the court did not discuss the *in pari delicto* doctrine, the court allowed the

22    chapter 7 trustee to bring malpractice and breach of fiduciary duty claims against the defendant

23    law firm.  The court expressly recognized that the chapter 7 trustee, "as successor to the debtor in

24    possession and representative of the estate, plainly is entitled to pursue whatever legal claims

25    belong to the estate."  <u>Id.</u>, at 265.

26    The foregoing cases, and the profound lack of any controlling (let alone persuasive)

27    cases to the contrary, lead to the inescapable conclusion that the doctrine of *in pari delicto* does

28    not bar a chapter 7 trustee from pursuing claims against a debtor who participates in fraud or other

1   misconduct post-petition.

2   **B.    Defendant Relies Upon Inapplicable Case Law Relating To Pre-Petition**

3   **Claims**

4   Theodosios cites a swath of cases to show that trustees are shackled by the *in pari*

5   *delicto* defense, but, as illustrated, each of these decisions suffer the same inapplicability to the

6   instant case - they all relate to wrongful acts committed by the debtor *before* the petition date.

7   Moreover, some of these decisions do not involve bankruptcy at all.

8   For instance, in Lafferty, a creditors committee was precluded from recovering

9   upon a pre-petition claim because the debtor's principals had participated in a Ponzi scheme prior

10   to the petition date.  The court held that because the claim would have been vulnerable to an *in*

11   *pari delicto* defense at the *commencement* of the case, it must remain so thereafter.  "Viewing the

12   claim as of the commencement of the bankruptcy, we find that the *in pari delicto* doctrine bars the

13   Committee, standing in the shoes of the Debtors, from bringing its claims…." Lafferty, 267 F.3d

14   at 360.   Whatever precedential value this decision may have over pre-petition claims in the Third

15   Circuit, it is irrelevant to the post-petition claims asserted in this action.

16   Other proffered cases suffer from the same defect.  Erricola v. Guadette (In re

17   Guadette), 241 B.R. 491 (Bankr. D. N.H. 1999), involved the debtor's alleged *pre-petition* scheme

18   to hide assets that would otherwise have been included in the bankruptcy estate.  USACM

19   Liquidating Trust v. Deloitte & Touche, LLP, 764 F. Supp. 2d 1210 (D. Nev. 2011), arose from

20   the defendants' alleged pre-petition diversion of service fees and costs.  Uecker v. Wells Fargo

21   Capital Fin., LLC (In re Mortgage Fund '08 LLC), 527 B.R. 351 (N.D. Cal. 2015), involved pre-

22   petition financial transactions which allegedly caused the debtor's bankruptcy.  And Casey v. U.S.

23   Bank Nat. Assn., 127 Cal. App. 4th 1138 (2005) involved the alleged diversion of funds prior to an

24   involuntary bankruptcy.  Not one of these cases involved claims arising out of a debtor's post-

25   petition fraudulent procurement of a sale order while acting as debtor in possession.  Thus, none of

26   Theodosios' cases are applicable here.

27   **C.    Defendant's Attempt To Apply The *In Pari Delicto* Doctrine To Post-**

28   **Petition Claims Relies Upon A Misreading Of The Bankruptcy Code**

1  While Theodosios' *in pari delicto* defense rests entirely on inapplicable case law

2  involving pre-petition claims, he also offers rather creative arguments in favor of applying it to

3  post-petition claims.  These arguments can be swiftly addressed and dismissed.

4  First, Theodosios asserts that since Section 541(a)(7) involves "any interest in

5  property that the estate acquires after the commencement of the case," then "a debtor's post-

6  petition claims would be subject to post-petition defenses."  However, Theodosios fails to

7  distinguish between the debtor and the estate.  The claim for recovery of the Properties, which

8  only arose after the petition date, is not a claim belonging to the Debtors.  It is a claim of the

9  estate.  The Debtors' own wrongful conduct does not inure to the detriment of the estate,

10  notwithstanding Theodosios' conclusory statements to the contrary.  More to the point, as noted

11  earlier, courts in the Ninth Circuit support a chapter 7 trustee's standing to pursue claims that arose

12  out of a chapter 11 debtor in possession's bad acts and fraud.  See <u>Giacometti</u>, 349 B.R. at 655

13  (holding that a bankruptcy trustee had standing to sue upon post-petition claims that arose after the

14  petition date, but prior to appointment of a chapter 11 trustee and conversion to chapter 7).

15  Second, Theodosios wrongly asserts that 11 U.S.C. § 348[7], which governs the

16  effects of conversion of a bankruptcy case, "supports the conclusion that the post-petition/pre-

17  conversion claims are subject to any defenses that exist against Harry and Ted."  This is not only

18  inaccurate, but is an intentional mischaracterization of the statute.  Theodosios contends that

19  "Section 342(b) provides that 'the order for relief under this chapter' in a chapter to which a case

20  has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of

21  such case to such chapter."  Shockingly, Theodosios ignores that this provision only applies in the

22  chapter 7 context to Sections 701(a) (appointment of an interim trustee), 727(a)(10) (the timing of

23  a written waiver by an individual debtor of his or her discharge), and 727(b) (the application of a

24  discharge to pre-conversion claims), none of which are relevant to this proceeding.  Similarly,

25  Theodosios refers to Section 348(d), which states that pre-conversion claims against the estate or

26

27  [7] Although Theodosios references 11 U.S.C. §§ 342, 342(b) and 342(d), Plaintiff understands that

28  he intended to reference 11 U.S.C. § 348 and 348(b).

1  the debtor are deemed, upon conversion , to have been incurred as of the petition date, and assert

2  that this provision somehow means that pre-conversion claims held by the chapter 11 estate must

3  be deemed, upon conversion, to be pre-petition assets[8].  No authority is proffered in support of this

4  conclusion; the one case that is cited - <u>USACM</u> - actually involves a pre-petition claim acquired

5  pursuant to Section 541(a)(1) and is not relevant.

### D.    The Inapplicability Of The Wagoner Rule Does Not Preserve The *In Pari Delicto Defense*

8  Theodosios next contends that the Court's prior rejection of the <u>Wagoner</u> rule -

9  which involves the imputation of bad acts committed by corporate insiders to the corporation itself

10  - should not prevent its application of the *in pari delicto* defense for three reasons.  First,

11  Theodosios points out that *in pari delicto* is an available defense in California and the Ninth

12  Circuit.  This statement is wholly irrelevant.  As demonstrated, the mere existence of the *in pari*

13  *delicto* defense under common law has nothing to do with its application to a bankruptcy trustee

14  prosecuting post-petition claims, particularly claim arising under Rule 60(d)(3) and Section 542

15  which could only arise *after* the commencement of the underlying bankruptcy case.  Second,

16  Theodosios states that California courts have approved the <u>Wagoner</u> rule, though he does not

17  explain why this therefore entitles him to invoke the *in pari delicto* defense under these facts.

18  This point is actually somewhat undercut by Theodosios' third argument, namely, that the

19  <u>Wagoner</u> rule is completely irrelevant to this case because the Debtors are individuals are not

20  corporate debtors.  The Trustee concedes that the Roussos Brothers are individual, not corporate,

21  debtors.  This simple fact, however, does not serve as any basis for deeming the Trustee to be *in*

22  *pari delicto* with the Debtors.

### E.    Equity Precludes Defendant From Invoking The *In Pari Delicto Defense*

25  As noted earlier, the *in pari delicto* defense sounds in equity.  Under prevailing

---

[8] Moreover, it should be noted that, consistent with the Court's ruling, Plaintiff is not seeking recovery from Theodosios's personal assets for pre-conversion damages in light of the Theodosios's discharge of dischargeable pre-petition claims.  See <u>Roussos</u>, <u>supra</u>, at 736.

1  law, one who seeks equity must do equity.  The Ninth Circuit in <u>Seller Agency Council, Inc. v.</u>

2  <u>Kennedy Center for Real Estate Educ., Inc.</u>, 621 F.3d 981 (9th Cir. 2010) set forth the law

3  concerning the right of a defendant to assert an equitable defense:

4              The doctrine [of unclean hands] bars relief to a plaintiff who has

5              violated conscience, good faith or other equitable principles in his

6              prior conduct, as well as to a plaintiff who has dirtied his hands in

7              acquiring the right present asserted.  <u>Dollar Sys., Inc. v. Avcar</u>

8              <u>Leasing Sys., Inc.</u>, 890 F.2d 165, 173 (9th Cir. 1989) (citations

9              omitted).  The doctrine of unclean hands also can bar a defendant

10             from asserting an equitable defense.  See <u>Jarrow Formulas, Inc. v.</u>

11             <u>Nutrition Now, Inc.</u>, 304 F.3d 829, 841-42 (9th Cir. 2002) (noting

12             that a defendant with unclean hands is barred from asserting the

13             equitable defense of laches).  It is fundamental to [the] operation of

14             the doctrine that the alleged misconduct by the [party] relate

15             directly to the transaction concerning which the complaint is made.

16             <u>Dollar Sys.</u>, 890 F.2d at 173 (quoting <u>Arthur v. Davis</u>, 126 Cal.

17             App. 3d 684, 693-94, 178 Cal. Rptr. 920 (Cal. Ct. App. 1981)).

18             [U]nclean hands does not constitute misconduct in the abstract,

19             unrelated to the claim to which it is asserted as a defense.  <u>Jarrow</u>,

20             304 F.3d at 841 (citing <u>Republic Molding Corp. v. B.W. Photo</u>

21             <u>Utils.</u>, 319 F.2d 347, 349 (9th Cir. 1963)).

22  <u>Id.</u>, at 986-87.

23             Where, as here, Theodosios, in concert with Harry, their spouses, the Entity

24  Defendants and others, are alleged to have engaged in fraudulent conduct with respect to the very

25  matters as to which Theodosios is asserting equitable defenses, those defenses are disallowed.  In

26  other words, "no one can take advantage of his own wrong."  California Civil Code § 3517.  Thus,

27  even if the *in pari delicto* doctrine could apply to the Trustee - which, as clarified earlier, it cannot

28  - Theodosios is precluded from asserting it as a defense.

1    **F.    The *In Pari Delicto* Defense Cannot Apply Against Alter Ego Parties**

2    Lastly, the *in pari delicto* defense cannot be applied in a motion for judgment on the pleadings for

3    a simple logical reason - *in pari delicto*, which measures wrongdoing between two parties,

4    inherently requires the presence of more than one party.  At the same time, the Trustee's

5    allegations in the Complaint that the Entity Defendants, the Debtors and their spouses were alter

6    egos of one another is deemed true when assaulted by a motion for judgment on the pleadings.

7    For purposes of the instant Motion, the Entity Defendants, the Debtors and their spouses are

8    deemed to be alter egos of one another.  There can be no comparison of wrongdoing between the

9    Debtors, their spouses, and the Entity Defendants because they are one and the same.    The

10    Roussos Brothers as the wrongdoers could never invoke the *in pari delicto* defense against

11    themselves as debtors.  Accordingly, this defense could never be applied against the Trustee by

12    Theodosios.

13    In <u>Gordon v. Harman (In re Harman)</u>, 529 B.R. 352 (Bankr. N.D. Ga. 2015), a

14    trustee filed a complaint (including claims for declaratory relief and turnover) alleging that the

15    debtor and the other defendants orchestrated a fraud to divert the debtor's own income to other

16    individuals and entities to hide assets.  As in this case, the trustee alleged that the scheme allowed

17    the debtor to enjoy and exercise *de facto* ownership of the assets, but hold them beyond the reach

18    of his creditors.  The trustee also asserted that the scheme stretched back for decades and involved

19    defendants that were merely alter egos of the debtor.

20    As in this case, the defendants filed a Rule 12(c) motion arguing that the trustee did

21    not have standing to assert claims on behalf of the debtor's creditors or, in the alternative, that the

22    trustee should be barred from bringing a claim under the doctrine of *in pari delicto*.  After

23    discussing the applicable standard for judging Rule 12(c) motions, the court quickly dismissed the

24    argument that the trustee's alter ego claims could not be pursued on behalf of the debtors' creditors.

25    According to the court, the defendants' repeated argument that trustee is just a middleman for

26    creditors is inaccurate.  "To find that the trustee has no standing to pursue causes of action

27    belonging to the debtor because the recovery would only benefit the creditors is an absurd

28    argument, given the fact that the trustee's goal is to make a distribution to creditors." <u>In re Plaza</u>

1  Mortgage & Fin. Corp., 187 B.R. 37, 42 (Bankr. N.D. Ga. 1995).  Thus, allowing the trustee's

2  claims under Section 541 is proper, since if the trustee's claims regarding the hidden assets are

3  true, then those assets would fall under Section 541 and be part of the bankruptcy estate.

4          Since the trustee had the authority under Section 541 to bring alter ego claims

5  which could be brought by the debtor's creditors, the court also rejected the application of the *in*

6  *pari delicto* defense.  In rejecting the defense, the Harman court noted that "[w]ith the case at bar,

7  Trustee's claims do not attempt to 'pick up the pieces' of a crumbling enterprise; rather, Trustee's

8  claims seek to disrupt a whole and unhindered scheme.  Assuming the allegations are true,

9  granting a judgment based on *in pari delicto* would be tantamount to helping carry out the

10  scheme."  Id., at 358.

11          A similar result would occur if this Court adopted the *in pari delicto* defense and

12  allowed the perpetrators of a pervasive fraud on the court to escape liability.  Fortunately, the law

13  is not on Theodosios' side.

14                              **V.**

15          **THE MOTION MUST BE DENIED SINCE THE TRUSTEE**

16                  **ADEQUATELY ALLEGES DAMAGES**

17      **A.      The Sale Order Did Not Conclusively Determine That The Estates**

18              **Lacked Equity In The Properties**

19          Rule 60(b) sets forth grounds upon which a court may relieve a party from a final

20  judgment or order, including fraud.  However, Rule 60(d)(3) explains that Rule 60 "does not limit

21  a court's power to set aside a judgment for fraud on the court."

22          From the inception of this case, Theodosios has repeatedly argued - wrongly - that

23  the Trustee's claims must be dismissed since he is barred from collaterally attacking the Sale Order

24  under Rule 60(b).  The Court has rejected this argument numerous times.  As the Court has

25  explained, the Trustee is using Rule 60(d)(3) to vacate the Sale Order since it was procured

26  through a well-conceived and well-implemented fraud on the presiding court.  Theodosios knows

27  the distinction, yet he stubbornly argues time and time again that this Court is duty bound to

28  follow decisions from other circuit and bankruptcy courts that preclude *Rule 60(b)* attacks on sale

1  orders.  So once again, the Trustee needs to demonstrate why these cases are misplaced and

2  entirely irrelevant to the disposition of this Motion.

3           For instance, Theodosios initially relies on the Michigan bankruptcy court's

4  decision in <u>In re Hi Tech Fleet Serv., Inc.</u>, 339 B.R. 428 (Bankr. E.D. Mich. 2006) for the

5  proposition that a sale order entered prior to conversion of a chapter 11 case binds, in perpetuity,

6  the successor trustee.  In <u>Hi Tech</u>, after a sale was concluded, the debtor converted its case to

7  chapter 7.  The chapter 7 trustee later determined that the post-sale payoff of $990,226.84 to the

8  lender wrongly included interest, fees, costs, and other charges totaling $117,555.95.  As a result,

9  the trustee commenced a complaint seeking a finding by the court that the lender's secured claim

10 prior to the closing did not exceed $872,650.89 and order the refund of the overpayment of

11 $117,555.95.  In dismissing the complaint, the court found that all parties with a vested interest in

12 challenging the amount of proceeds paid to the lender from the sale had notice and an opportunity

13 to challenge, object to, or appeal the sale.  However, no junior creditor, secured or unsecured,

14 challenged the sale order and no party sought an accounting.  In precluding the trustee from

15 challenging the amount paid to the lender, the court in <u>Hi Tech</u> relied primarily on the Seventh

16 Circuit's factually distinguishable decision in <u>Gekas v. Pipin (In re Met-L-Wood Corp.)</u>, 861 F.2d

17 1012 (7th Cir. 1988).  This Court already has found the <u>Gekas</u> decision both legally and factually

18 distinguishable to the facts of this case and there is no reason for the Court to depart from its prior

19 rulings.[9]

20          As the Court noted when it first considered <u>Gekas</u> in connection with the Debtors'

21 unsuccessful Rule 12(b)(6) motions to dismiss the Complaint, the Trustee's claims are predicated

22 on Rule 60(d)(3), not 60(b).  As opposed to Rule 60(b) which sets forth grounds upon which a

23 court may relieve a party from a final judgment or order, Rule 60(d)(3) does not  limit a court's

24 power to set aside a judgment for fraud on the court.  Rule 60(d)(3) is a codification of the court's

25

_____

26 [9] The Court's rejection of <u>Gekas</u> and its progeny constitutes the law of the case.  Under the
   doctrine of law of the case, "when a court decides upon a rule of law, that decision should
27 continue to govern the same issues in subsequent stages in the same case."  <u>Musacchio v. United</u>
   <u>States</u>, __ U.S. __, 136 S. Ct. 709, 716, 193 L. Ed. 2d 639 (2016).
28

1     "inherent power ... to investigate whether a judgment was obtained by fraud." <u>Universal Oil</u>

2     <u>Products Co. v. Root Ref. Co.</u>, 328 U.S. 575, 580, 66 S. Ct. 1176, 90 L. Ed. 1447 (1946). "There

3     is no statute of limitations for fraud on the court. And jurisdiction exists to consider such a claim

4     even if there are no adversary parties then present before the court." <u>Valerio v. Boise Cascade</u>

5     <u>Corp.</u>, 80 F.R.D. 626, 640 n.10 (N.D. Cal. 1978), <u>aff'd</u>, 645 F.2d 699 (9th Cir. 1981).

6            Here, contrary to <u>Gekas</u>, the Trustee's Complaint alleged facts sufficient to state a

7     claim for fraud on the court under Rule 60(d)(3). The Roussos Brothers' false declarations made it

8     impossible for the presiding bankruptcy court to "perform in the usual manner its impartial task of

9     adjudging" the operative sale motion. <u>Anand v. CITIC Corp. (In re Intermagnetics Am., Inc.)</u>, 926

10     F.2d 912 (9th Cir. 1991). The presiding bankruptcy court's impartial review was fatally

11     compromised by its lack of awareness of a crucial fact - that the purported arms-length sale was in

12     reality a sale to entities controlled by insiders.

13            Although nothing in the Bankruptcy Code prohibits a sale to insiders, insider sales

14     are subject to "heightened scrutiny to the fairness of the value provided by the sale and the good

15     faith of the parties in executing the transaction." <u>In re Family Christian, LLC</u>, 533 B.R. 600, 622

16     (Bankr. W.D. Mich. 2015). This is because insiders "usually have greater opportunities for ...

17     inequitable conduct." <u>Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators, Inc.)</u>,

18     926 F.2d 1458, 1465 (5th Cir. 1991). See also <u>In re Tidal Const. Co., Inc.</u>, 446 B.R. 620, 624

19     (Bankr. S.D. Ga. 2009) ("[E]ven when parties are completely forthright with the facts surrounding

20     the transfer, § 363 sales to insiders are subject to a higher scrutiny because of the opportunity for

21     abuse."); <u>Rickel & Associates v. Smith (In re Rickel & Associates, Inc.)</u>, 272 B.R. 74, 100 (Bankr.

22     S.D.N.Y. 2002) (same); <u>In re W.A. Mallory Co., Inc.</u>, 214 B.R. 834, 837 (Bankr. E.D. Va. 1997)

23     (same).

24            As the bankruptcy court recognized, a sale to insiders is fundamentally different

25     from a sale at arms-length. In an arms-length transaction, the asset's exposure to the marketplace

26     insures that the price is reasonable whereas insider sales, by their very nature, lack this

27     characteristic. Insiders do not have an incentive to aggressively market the assets to obtain the

28     highest price. Their incentive is just the opposite - the less marketing, and the lower the price, the

1    better.  "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the

2    estate under the circumstances."  Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R.

3    282, 288-89 (9th Cir. BAP 2005).  As a result of the Roussos Brothers' false declarations, the

4    original presiding court could not apply the heightened scrutiny necessary to insure that the insider

5    sales yielded optimal value for creditors.  By preventing the court from applying the correct legal

6    standard, the Roussos Brothers' "perjury ... was so fundamental that it undermined the workings of

7    the adversary process itself."  United States v. Stonehill, 660 F.3d 415, 445 (9th Cir. 2011).

8            Similar to the situation in Levander v. Prober (In re Levander), 180 F.3d 1114 (9th

9    Cir. 1999), the perjury was part of a scheme by the Roussos Brothers to "hide a key fact from the

10   court and the opposing party."  Stonehill, 660 F.3d at 445.  In Levander, the key hidden fact was

11   that a corporation had transferred its assets to a related partnership that neither the court nor the

12   parties knew existed.  Levander, 180 F.3d at 1120.  As a result of the perjured statement that the

13   assets had not been transferred, the Levander court imposed attorney's fees upon the wrong party.

14   The perjury was serious enough to constitute fraud upon the court because there was no way that

15   the court or the parties could be aware of the deception.

16           The false statements alleged here are at least as serious as those in Levander.

17   Similar to Levander, the presiding court did not know, and could not have known, that the sham

18   entities purportedly purchasing the Properties at arms-length were in fact secretly controlled by the

19   Roussos Brothers.  As a result of this hidden fact, the adversary process could not function in its

20   normal fashion.  No objections were asserted to the sale based on the insider status of the

21   purchaser entities.  In a normally functioning adversary process, proposed sales to insiders

22   frequently generate considerable creditor opposition.  For example, in Family Christian, the

23   debtors voluntarily withdrew a motion to sell substantially all of their assets to an insider after

24   encountering numerous objections from creditors.  Family Christian, 533 B.R. at 607.  Even after

25   the debtors obtained court approval of more robust bidding procedures, substantial creditor

26   opposition to the insider bid persisted.

27           This Court correctly refused to follow the Seventh Circuit's decision in Gekas since

28   it found the Seventh Circuit's approach inconsistent with Rule 60(d)(3).  According to the Court,

1    <u>Gekas</u> was inapplicable since the Court held that it would be fraud against creditors, but not fraud

2    on the court, for a debtor's controlling officer "to use his control to walk off with its [the debtor's]

3    principal assets for a song, shucking off the unsecured creditors in the process." <u>Gekas</u>, 861 F.2d

4    at 1019.  As a rationale for its limited holding, <u>Gekas</u> points to the necessity of finality in

5    bankruptcy sales to maximize the sales price.  <u>Id.</u>, at 1019.  However, as noted by the Court,

6    <u>Gekas</u> pays insufficient attention to the decreased sale price that inevitably results when debtors

7    collusively sell assets to entities under their secret control.  As discussed, debtors in such schemes

8    have no incentive to aggressively market the assets so that the estate obtains optimal value.

9    Therefore, immunizing fraudulent and collusive sales from later attack decreases sale prices.  And

10   allowing the court to remain infected by such serious fraud undermines the legitimacy of the

11   bankruptcy sales process, further deterring serious bidders.

12            Since the Seventh Circuit's decision has the unintended consequence of

13   eviscerating Rule 60(d)(3) claims in the face of clear fraud, this Court, as well as the District

14   Court, had no choice but to disregard its restrictive holding.  The Court's decision is consistent

15   with the collection of cases from this Circuit interpreting the breadth and scope of Rule 60(d)(3)

16   claims.  None of the other cases cited by Theodosios warrants a deviation from the Court's prior

17   rulings.

18            In <u>Winget v. JP Morgan Chase Bank, N.A.</u>, 537 F.3d 565 (6th Cir. 2008), the Sixth

19   Circuit refused to permit a third party (not a trustee) from proceeding with a complaint which, in

20   essence, challenged a prior sale order.  The Court noted that the doctrine of res judicata is meant to

21   bar a party from bringing any claim that should have been litigated in the earlier proceeding.

22   According to the Court, Winget's claims attacked the heart of the sale order:  the value of the

23   assets.  Those claims, according to the Court, should only have been brought before the

24   bankruptcy court issued the sale order and Winget was a party to the bankruptcy case and had

25   ample opportunity to raise those issues.  As opposed to this case, Winget was not seeking to vacate

26   the order for fraud on the court.  Fraud on the court was also not an issue before the Court in <u>In re</u>

27   <u>Thomas</u>, 474 Fed. Appx. 500 (9th Cir. 2012), where the Court made merely passing reference to

28   the finality of sale orders in discussing the challenge to a fee application.  <u>Thomas</u>, like <u>Winget</u>,

1   has no relevance to the Trustee's Rule 60(d)(3) claims against the Entity Defendants and the

2   Debtors.

3          Moreover, the legitimacy of the sale of the Properties was not litigated and decided

4   for all purposes by the presiding court, as Theodosios cavalierly suggests.  The massive fraud

5   orchestrated by the Roussos Brothers, their spouses, and the Entity Defendants prevented that

6   from occurring.  Thus, the issues of whether the Properties were over-encumbered or were

7   sufficiently marketed were not litigated to the extent that the Sale Order is to be given preclusive

8   effect on these issues.  Neither is the Sale Order immune from being vacated under Rule 60(d)(3)

9   since it allegedly is *in rem* in nature and effective against the world, as the court held in Battle

10  Ground Plaza, LLC v. Estate of Jessen (In re Ray), 2008 Bankr. LEXIS 4758 (9th Cir. BAP 2008),

11  rev'd and remanded on other grounds, 624 F.3d 1124 (9th Cir. 2010).  As even the court in Ray

12  found, although an order confirming a sale of assets is considered a final judgment, they are not

13  insusceptible to attack.  See In re Transcon. Energy Corp., 683 F.2d 326, 328 (9th Cir. 1982)

14  ("Because of the great interest in the finality of judicial sales, the standard for setting aside a

15  confirmed sale is stricter than the standard for rejecting a proposed sale."); Taylor v. Lake (In re

16  Cada Investments, Inc.), 664 F.2d 1158, 1162 (9th Cir. 1981) ("the policy of finality normally

17  protects confirmed sales from orders to set aside").  "Other than appealing the sale order, the

18  appropriate method to attack a court-approved sale is by a motion to vacate the sale order under

19  FRCP 60(b), made applicable by Rule 9024."  Ray, 2008 Bankr. LEXIS 4758, at *30.  Not

20  mentioned, obviously, is an attack of a sale order brought by a trustee under Rule 60(d)(3).  Also

21  not mentioned anywhere in Ray is the proposition that a trustee who seeks to vacate a sale order

22  for fraud on the court is precluded from doing so by res judicata and collateral estoppel.

23          In fact, there is not a single case cited by Theodosios which holds that a trustee is

24  precluded from using Rule 60(d)(3) to vacate a sale order procured by fraud on the court under the

25  doctrines of res judicata or collateral estoppel.  Such a ruling would neuter Rule 60(d)(3) claims in

26  the context of fraudulently procured sales and would shield fraudsters from liability.  Even the

27  passage of twenty-two years will not protect the Roussos Brothers,, their spouses, and the Entity

28  Defendants, and their day of reckoning is fast approaching.

**B.**    **The Trustee's First Four Claims Are Not Barred Since There Is No Binding Determination That They Were Sufficiently Marketed And Were Over-Encumbered**

Relying on the false narrative that the Sale Order constituted a binding determination that the Properties were sufficient marketed and were over-encumbered, Theodosios contends that the Trustee cannot prove damages and, in the absence of damages, the Trustee's claims are not actionable as a matter of law.  The law, as well as the underlying record of this case, holds otherwise.

First, there is not a single finding Theodosios can point to where the presiding court conclusively found that the Properties were sufficiently marketed and were over-encumbered.  Rather, Theodosios believes that the mere entry of the Sale Order provides him the comfort on these issues even if the Trustee is able to prove (which he certainly will do at trial) that the Entity Defendants together with the Roussos Brothers and their spouses engineered a fraud on the court.  The simple fact that they were successful in defrauding the court and creditors does not impart finality to the Sale Order.  Creditors were clearly damaged by the fraud on the court, as the Trustee will demonstrate at trial; the notion that creditors were not damaged is nonsensical.

In support of his preposterous position, Theodosios relies on a series of cases already rejected by this Court in the context of the previously unsuccessful attempts to dismiss the Complaint, compel abandonment of the claims for relief, or prevent the imposition of a preliminary injunction of the arbitration action.  There is nothing new in this Motion.

For instance, although Theodosios cites to the Supreme Court's decision in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S. Ct. 997, 88 L. Ed. 1250 (1944) and the Ninth Circuit's decision in Dixon v. C.I.R., 316 F.3d 1041 (9th Cir. 2003), he underestimates the import of the decisions and wrongly contends that these cases prevent the Trustee from proceeding with his claims under Rule 60(d)(3).  These cases actually support denial of the Motion.

As the Supreme Court found in Hazel-Atlas, a motion brought under Rule 60(d) is about a "wrong against the institutions set up to protect and safeguard the public, institutions

27

1   which fraud cannot complacently be tolerated consistently with the good order of society."  Hazel-

2   Atlas, 322 U.S. at 245.  A court must utilize its "historic power of equity to set aside [a]

3   fraudulently begotten judgment" in order to uphold the "preservation of the integrity of the judicial

4   process."  Id.; see also Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S. Ct. 2123; 115 L. Ed. 2d

5   27 (1991) ("[T]his inherent power [. . .] allows a federal court to vacate its own judgment upon

6   proof that a fraud has been perpetrated upon the court").  Rule 60(d)(3) was enacted to prevent

7   fraudsters such as the Roussos Brothers, their spouses and the Entity Defendants from escaping

8   liability.  The Roussos Brothers, who, in league with their spouses and the Entity Defendants and

9   others, knowingly submitted fraudulent declarations which referred to sham purchase and sale

10   agreements as part of a scheme developed with their lawyer in order to convince the presiding

11   court to enter the Sale Order, must be held accountable for their fraud and continuing active cover-

12   up of their knowing misdeeds.  Even if there was no pecuniary damage to creditors, which there

13   certainly is in this case, the Court would still maintain the right to enter an award or vacate the

14   Sale Order to remediate the fraud.  Moreover, this Court previously held that merely paying the

15   claims of unpaid creditors would not necessarily cleanse the Roussos Brothers of their fraud.

16   Thus, the argument that Rule 60(d)(3) can only be used when the fraud causes direct monetary

17   damage (as this one did) is an overly restrictive interpretation of the breadth and scope of the

18   court's powers under Rule 60(d)(3), and there is no controlling case upholding this self-serving

19   view.

20           In Dixon, the Ninth Circuit discussed the type of fraud that constitutes a claim for

21   fraud on the court.  The Court stated that it is conduct which harms the integrity of the judicial

22   process and which rises to the level of an "unconscionable plan or scheme which is designed to

23   improperly influence the court in its decisions."  As pled in the Complaint, prior to the filing of the

24   petitions for relief, the Roussos Brothers met with and engaged the services of an attorney (Robert

25   Beaudry), and with him hatched their plot to defraud their creditors and the presiding court.  The

26   Complaint also alleges that in furtherance of their scheme, Beaudry formed the buying entities

27   (O.F. and S.M.B.) and the Debtors filed chapter 11 petitions, presented the Sale Motion to the

28   bankruptcy court supported by their false and fraudulent declarations to which they attached

1  supposedly arms-length agreements which, in fact, were sham sale agreements, and, as a result,

2  the Debtors, their spouses, and the Entity Defendants were able to mislead the court into

3  approving the Sale Motion in a desecration of the judicial process.  Rule 60(d)(3) was enacted

4  specifically to redress this type of abuse, notwithstanding that the fraud was perpetrated over

5  twenty-two years ago.  Theodosios somehow thinks that <u>Dixon</u> is not supportive of the Trustee's

6  Rule 60(d)(3) claims since the Court in <u>Dixon</u> expressly noted that certain taxpayers were directly

7  affected by the fraud.  The same holds true here.  Creditors holding millions of dollars in claims

8  were impacted by the Roussos Brothers', their spouses' and the Entity Defendants' fraud.

9        The Court in <u>Stonehill</u>, <u>supra</u>, another case cited by Theodosios, stated that perjury

10  and non-disclosure may be enough to support fraud on the court if the perjury or non-disclosure

11  was so fundamental that it undermined the workings of the adversary process itself.  The <u>Stonehill</u>

12  Court also looked at the allegations of fraud on the court as a whole, analyzing whether, taken

13  together, the misrepresentations and nondisclosures "change[d] the story presented to the district

14  court".  <u>Stonehill</u>, 660 F.3d at 452.  <u>Stonehill</u> makes clear that a court is not limited to analyzing

15  each alleged instance of misconduct in a vacuum, but must also consider whether a party's entire

16  course of conduct rises to the level of undermining the judicial process sufficient to constitute

17  fraud.  <u>Id.</u>, at 454.  The Debtors, in their declarations in support of the Sale Motion, materially

18  misrepresented the facts to mislead the court into believing that the proposed sale transactions

19  were arms-length sales to non-insider good faith purchasers, rather than to entities under their

20  ownership, direction, and control formed as part of their conspiracy to acquire the Properties for

21  essentially no consideration to the estates free and clear of Lula's interests.  There was no bidding

22  process, no marketing efforts, the sales contracts were bogus documents, and the Debtors were

23  able to successfully desecrate the judicial process.  In furtherance of their plan to defraud the

24  court, they continued to commit perjury post-sale at judgment debtor examinations conducted in

25  2005 and 2014 to cover up their fraud.

26        Moreover, the Sale Motion itself suggests that the Properties were not adequately

27  marketed.  Theodosios' declaration in support of the Sale Motion states that he did not enter into a

28  listing agreement with any real estate brokers, purportedly because each broker demanded

1   exclusivity and Theodosios "wanted the widest possible base of support in marketing" the

2   Properties.  The marketing efforts consisted of informal contact with real estate brokers and the

3   distribution of flyers.  The Sale Motion did not specify how many flyers were distributed or where

4   they were distributed.  Once again, the bankruptcy court's lack of awareness of the true nature of

5   the sale prevented it from applying the heightened scrutiny that could have brought to light any

6   inadequacies in the marketing process.  Therefore, the intimation that the Sale Order conclusively

7   found that the Properties were sufficiently marketed is an intentional misrepresentation of the

8   underlying record.

9          "[M]ost fraud upon the court cases involve a scheme by one party to hide a key fact

10   from the court and the opposing party".  Id., at 444.  This is precisely what the Roussos Brothers

11   succeeded in doing in 1994.  They deceived the court into thinking that the Properties were

12   marketed.  They lied about the "good faith" purchasers, S.M.B. and O.F.  They lied that the

13   Properties were over-encumbered.  They misled the court and all parties into believing that they

14   had no connection or interest in the buyers while all along they directly or indirectly owned and

15   controlled the buying entities which were formed by Beaudry, their lawyer, to be straw buyers.

16   Had the court known the true connection between the Roussos Brothers and S.M.B./O.F. and the

17   true facts as alleged in the Complaint, it would never have granted the Sale Motion.  The Supreme

18   Court and lower federal courts have numerous times recognized the need to protect the institutions

19   of justice from egregious fraud.  The "Courts cannot lack the power to defend their integrity

20   against unscrupulous marauders; if that were so, it would place at risk the very fundament of the

21   judicial system." Aoude v. Mobile Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989).

22          Unbelievably, Theodosios thinks that even if the Trustee can prove fraud on the

23   court, that he must also prove prejudice to the opposing party.  First, there is no qualifying

24   language in Rule 60(d)(3) requiring such an additional showing.  See United States v. Ron Pair

25   Enters., 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (finding reference to

26   legislative history unnecessary in light of clear meaning of the language of the statute); In re

27   Caldor Corp., 303 F.3d 161, 167 (2d Cir. 2002) ("The task of resolving a dispute over the meaning

28   of a provision of the Bankruptcy Code begins where all such inquiries must begin: with the

language of the statute itself.").  Although certain courts may have conducted factual inquiries into

whether there was prejudice or harm to third parties by reason of the fraud, this is not a

requirement, and the mere presence of fraud on the court is sufficient to permit a court to vacate an

order and award the appropriate damages.  Additionally, Theodosios' argument that there was no

prejudice to the parties is based on the faulty logic that the Sale Order, which was procured solely

through fraud, conclusively determined (since there was no appeal) that there was no damage to

the Roussos Brothers' estates and without any damage, there was no "grave miscarriage of justice."

However, the Trustee, as the fiduciary for all harmed creditors, is not precluded from vacating the

Sale Order merely because it was not appealed by Lula or any other creditor.

   Theodosios also relies on two further cases, notably, <u>Appling v. State Farm Mut.</u>

<u>Auto. Ins. Co.</u>, 340 F.3d 769 (9th Cir. 2003) and <u>Levander</u>, <u>supra</u>, regarding the Rule 60 standard.

<u>Appling</u> is cited for the proposition that only those instances where a grave injustice has occurred

should a court set aside a judgment based upon fraud on the court.  <u>Levander</u> is cited for the

proposition that there must be actual damage to the opposing party by virtue of the fraud.

Unfortunately, like the numerous motions filed before this one, Theodosios' Motion completely

ignores the allegations of the Complaint and the facts that have been uncovered in discovery, and,

instead, without discussion of the specific allegations or facts, makes the conclusory assertion that

the Trustee cannot prove, or is precluded from proving, economic damage to creditors.  There is

no legal support for this position.

   The Ninth Circuit's decision in <u>Anand v. CITIC Corp. (In re Intermagnetics Am.,</u>

<u>Inc.)</u>, 926 F.2d 912 (9th Cir. 1991) also offers no solace to Theodosios.  As this Court has held

several times, the presiding bankruptcy court's impartial review of the sale was fatally

compromised by its lack of awareness of a crucial fact - that the purported arms-length sales were

in reality sales to entities controlled by insiders.  Since the Roussos Brothers' false declarations

made it impossible for the bankruptcy court to "perform in the usual manner its impartial task of

adjudging" the Sale Motion, none of the implicit findings Theodosios now suggests are explicit are

binding on the Trustee.  And <u>Anand</u> certainly does not require a different result.  In <u>Anand</u>, the

fraud resulted in a court-approved sale for $10,000,000 less than what another party would have

1    paid but for the unlawful bid rigging.  Here, but for the Roussos Brothers' fraud and deception

2    (which went uncovered for more than twenty-two years), the presiding court would not have

3    approved sales of the Properties for no consideration, while at the same time wiping out the claims

4    of legitimate creditors.[10]

5          Actual damage to both creditors and the integrity of the judicial system was caused

6    by the fraud perpetrated on the court, and Rule 60(d)(3) can be used to remedy the damage.

7          **C.    The Defendant Cannot Escape Liability Due To The Fraud Perpetrated**

8          **On The Presiding Court**

9          As noted, there is no binding effect of the Sale Order that exenterates the Trustee's

10    standing and authority to undo the fraud utilizing Rule 60(d)(3).  The Sale Order can be (and will

11    be after trial) vacated, and the Properties returned to the estates for further proceedings to insure

---

12    [10] Theodosios accurately states that the Trustee is not seeking recovery of the Properties or
13    damages under 11 U.S.C. §§ 544(b), 547, 548, or 549.  However, that does not mean that the
Properties lost their status as property of the bankruptcy estates once they were sold pursuant to
14    Section 363 of the Code and that only through an avoidance action where the transfers are avoided
can the Properties ever become property of the estate.  In this regard, Theodosios ignores
15    California Civil Code § 3518 which states that "[h]e who has fraudulently dispossessed himself of
16    a thing may be treated as if he still had possession."  This maxim of jurisprudence is consistent
with the expansive nature of the Bankruptcy Code's broad definition of property of the estate
17    contained in Section 541.  As the Supreme Court stated:

18          § 541(a) provides that the "estate is comprised of all the following property,
            wherever located: ... all legal or equitable interests of the debtor in property as of
19          the commencement of the case."  11 U.S.C. § 541(a)(1).  The House and Senate
            Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad.  Most
20          important, in the context of this case, § 541(a)(1) is intended to include in the
            estate any property made available to the estate by other provisions of the
21          Bankruptcy Code.  See H.R.Rep. No. 95B595, p. 367 (1977).  Several of these
            provisions bring into the estate property in which the debtor did not have a
22          possessory interest at the time the bankruptcy proceedings commenced.  Section
            542(a) is such a provision.  It requires an entity (other than a custodian) holding
23          any property of the debtor that the trustee can use under § 363 to turn that
            property over to the trustee.  Given the broad scope of the reorganization estate,
24          property of the debtor repossessed by a secured creditor falls within this rule, and
            therefore may be drawn into the estate.  While there are explicit limitations on the
25          reach of § 542(a), none requires that the debtor hold a possessory interest in the
            property at the commencement of the reorganization proceedings.

26

27    U.S. v. Whiting Pools, Inc., 462 U.S. 198, 204-206, 103 S. Ct. 2309, 2313-14, 76 L. Ed. 2d 515
28    (1983).

that the legitimate creditors are finally and fully compensated.

## VI.

### PLAINTIFF SHOULD BE PERMITTED TO AMEND THE COMPLAINT IF THE COURT FINDS THAT ANY CLAIM FOR RELIEF IS NOT ADEQUATELY PLED

As discussed above, the Trustee believes each of the claims for relief in the Complaint has been adequately alleged and does not believe the Motion has any merit. In the event the Court determines that any claim for relief has not been sufficiently pled, the Trustee requests that the Court grant him leave to amend the Complaint to correct any pleading deficiency.

Rule 7015(a)(2) of the Federal Rule of Bankruptcy Procedure 7015(a)(2) provides that a court "should freely give leave [to amend a complaint] when justice so requires". Fed. R. Bankr. P. 7015(a)(2). The rule should be interpreted with "extreme liberality". United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Whether leave to amend should be granted is generally determined by considering the following factors: (i) undue delay; (ii) bad faith; (iii) futility of amendment; and (iv) prejudice to the opposing party. See Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir. 1991). Prejudice to the opposing party is the most important factor. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971). Moreover, it repeatedly has been held that delay, without "specifically resulting prejudice" or futility, or without any purpose to harass the opponent, is not a sufficient reason for denial of leave to amend. Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987).

Here, Theodosios alleges that since the trial is scheduled for October 31, 2016, it would be prejudicial to allow the Complaint to be amended. However, there is no evidentiary support for this contention. Discovery has been completed, the parties are ready for trial, and fixing any perceived deficiencies in the Complaint (of which there are none) would neither delay trial nor prejudice Theodosios. Theodosios is fully aware of the nature of the allegations against him, and allowing technical amendments to the Complaint will not require any postponement of the October 31 trial. In addition, the argument that it would be futile to permit an amendment since the Trustee cannot possibly plead a Rule 60(d)(3) claim has been shown to be a legally

1  untenable argument.  If the Court requires additional facts to be pled to overcome any potential

2  defense, then the Trustee must be permitted the time to do so.  Indeed, dismissal without leave to

3  amend is proper only in extraordinary cases.  See <u>Broam v. Bogan</u>, 320 F.3d 1023, 1028 (9th Cir.

4  2003) (citing <u>United States v. City of Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981)); <u>Angelov</u>

5  <u>v. Wilshire Bancorp, Inc.</u>, 331 Fed. Appx. 471, 472 (9th Cir. 2009).  Where it appears that a

6  complaint may be saved by the allegation of additional facts, the complaint should not be

7  dismissed without leave to amend.  See <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

8  banc) ("[A] district court should grant leave to amend ... unless it determines that the pleading

9  could not possibly be cured by the allegation of other facts.").

10  Therefore, to the extent the Court believes any claim for relief was not properly

11  pled, this Court should afford the Trustee an opportunity to file an amended complaint, especially

12  in the absence of any demonstrable prejudice to Theodosios.

13  **VII.**

14  **<u>CONCLUSION</u>**

15  Based on the foregoing, the Trustee respectfully requests that the Motion be denied

16  in all respects, that, in the alternative, the Trustee be permitted leave to amend the Complaint, and

17  for such other and further relief as the Court deems just and proper.

18  DATED: September 7, 2016          LAW OFFICES OF ROBERT A. WEINBERG

19  LAW OFFICES OF IRA BENJAMIN KATZ, A
   PROFESSIONAL CORPORATION

20

21

22  By: /s/ *Ira Benjamin Katz*
23  Ira Benjamin Katz
   Special Litigation Counsel for Plaintiff, Howard M.
24  Ehrenberg, Chapter 7 Trustee

25

26

27

28

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1925 Century Park East, Suite 1700, Los Angeles, CA 90067. A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On September 7, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below: adv no. 2:15-ap-01404

- **Howard M Ehrenberg (TR)**    ehrenbergtrustee@sulmeyerlaw.com, ca25@ecfcbis.com;C123@ecfcbis.com;hehrenberg@ecf.inforuptcy.com

- **Gregory K Jones**    GJones@dykema.com, CAcossano@dykema.com

- **Ira Benjamin Katz**    IKatz@katzlaw.net, ikatz@ecf.inforuptcy.com

- **Daniel A Lev**    dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com;dlev@ecf.inforuptcy.com;dwalker@sulmeyerlaw.com

- **Daniel J McCarthy**    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;docket@hillfarrer.com

- **Jonathan Shenson**    jshenson@shensonlawgroup.com

- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

- **Robert A Weinberg**    raw@rweinberglaw.com

- **Daniel J Weintraub**    dan@wsrlaw.net, jamie@wsrlaw.net;vinnet@ecf.inforuptcy.com

- **Steven Werth**    swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com;slee@sulmeyerlaw.com;slee@ecf.inforuptcy.com;asokolowski@ecf.inforuptcy.com;swerth@ecf.inforuptcy.com

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 7, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

'Theodosios Roussos - theodosiosroussos@gmail.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/7/16 | Ira Benjamin Katz | /S/ Ira Benjamin Katz |
|--------|-------------------|------------------------|
| *Date* | *Printed Name* | *Signature* |

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1925 Century Park East, Suite 1700, Los Angeles, CA 90067. A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On September 7, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below: adv no. 2:15-ap-01406

- **Howard M Ehrenberg (TR)**    ehrenbergtrustee@sulmeyerlaw.com, ca25@ecfcbis.com;C123@ecfcbis.com;hehrenberg@ecf.inforuptcy.com

- **Gregory K Jones**    GJones@dykema.com, CAcossano@dykema.com

- **Ira Benjamin Katz**    IKatz@katzlaw.net, ikatz@ecf.inforuptcy.com

- **Daniel A Lev**    dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com;dlev@ecf.inforuptcy.com;dwalker@sulmeyerlaw.com

- **Daniel J McCarthy**    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;docket@hillfarrer.com

- **Jonathan Shenson**    jshenson@shensonlawgroup.com

- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

- **Robert A Weinberg**    raw@rweinberglaw.com

- **Steven Werth**    swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com;slee@sulmeyerlaw.com;slee@ecf.inforuptcy.com;asokolowski@ecf.inforuptcy.com;swerth@ecf.inforuptcy.com

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 7, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Theodosios Roussos - theodosiosroussos@gmail.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/7/16 | Ira Benjamin Katz | /S/ Ira Benjamin Katz |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |