

**FILED & ENTERED**

**SEP 22 2016**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY evangeli   DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | | | |
|---|---|---|---|
| In re: | Harry Roussos, Debtor | Case Nos.: | 2:15-bk-21624-ER and 2:15-bk-21626-ER (jointly administered) |
| In re: | Theodosios Roussos, Debtor (jointly administered) | Adv. Nos.: | 2:15-ap-01404-ER and 2:15-ap-01406-ER |
| HOWARD M. EHRENBERG, Chapter 7 Trustee for the Estates of Harry Roussos and Theodosios Roussos,<br><br>Plaintiff<br><br>v.<br><br>HARRY ROUSSOS; THEODOSIOS ROUSSOS; O.F. ENTERPRISES, L.P.; LIRO, INC.; S.M.B. INVESTORS ASSOCIATES, L.P.; S.M.B. MANAGEMENT, INC.; CHRISTINE ROUSSOS; PAULA ROUSSOS; CHASE BANK N.A.; ONEWEST BANK N.A., and DOES 1 through 50,<br><br>Defendants | | **MEMORANDUM OF DECISION DENYING MOTIONS FOR JUDGMENT ON THE PLEADINGS**<br><br><br>Date:   September 21, 2016<br>Time:   10:00 a.m.<br>Location:   Ctrm. 1568<br>Roybal Federal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 | |

    On September 21, 2016, the Court conducted a hearing on identical motions for judgment on the pleadings filed by S.M.B. Investors Associates, L.P., S.M.B. Management, Inc., O.F. Enterprises, Ltd., and Liro, Inc. (the "Four Entities")[1] and Theodosios Roussos (Theodosios and

---

[1] The Four Entities filed their motion on August 23, 2016. On August 30, 2016, Theodosios filed a motion identical to the motion filed by the Four Entities. The Court ordered that the motions be

the Four Entities are collectively referred to as the "Defendants"). The Court issued a tentative ruling prior to the hearing. At the conclusion of the hearing, the Court took the matter under submission. For the reasons set forth below, the Motions are DENIED. Substantive additions to the Court's tentative ruling are highlighted in red text.

# I. Facts and Summary of Pleadings
**Summary of the Complaint**

The allegations of the Complaint are as follows:

In the early 1980s, August Michaelides partnered with Theodosios Roussos ("Theodosios") and Harry Roussos ("Harry")[2] (collectively, the "Roussos Brothers") to purchase two apartment buildings in the greater Los Angeles area: (1) a 20-unit building located at 2727–2741 Abbott Kinney Boulevard, Venice, CA ("Abbot Kinney Property") and (2) a 30-unit building located at 153 San Vicente Boulevard, Santa Monica, CA ("San Vicente Property") (collectively, the "Properties"). Complaint [Doc. No. 1] at ¶26.[3] Pursuant to the agreement with the Roussos Brothers, August was to receive a 33 1/3% ownership interest in the Abbot Kinney Property and a 10% ownership interest in the San Vicente Property. *Id.* at ¶27.

August Michaelides died in 1992. *Id.* at ¶28. When his widow Lula Michaelides ("Michaelides") inquired about her pro-rata share of income from the Properties, she failed to receive satisfactory responses from the Roussos Brothers. *Id.* at ¶29. Michaelides then discovered that the Roussos Brothers had failed to include her husband August on title to the Properties. *Id.*

Michaelides commenced an action to quiet title in the Los Angeles Superior Court ("State Court").[4] *Id.* at ¶30. On March 2, 1994, the State Court entered judgment awarding Michaelides monetary damages and quieting title to the Properties. *Id.* at ¶31. On June 15, 1994, the State Court entered an amended judgment ("Amended State Court Judgment") awarding $600,000 in compensatory damages, $400,000 in punitive damages, and $10,000 in costs, and quieting Michaelides' title to the 10% interest in the San Vicente Property and the 33 1/3% interest in the Abbot Kinney Property. *Id.* at ¶¶31–32.

The Roussos Brothers retained attorney Robert Beaudry ("Beaudry") to facilitate a conspiracy in which the Properties would fraudulently be transferred out of their names and into the names of corporate entities which they secretly controlled, thereby extinguishing Michaelides' fractional interest. *Id.* at ¶33. In furtherance of the conspiracy, Beaudry formed S.M.B. and O.F., both of which were controlled by Harry and Theodosios and their spouses

---

heard concurrently since they raised the same arguments. (The papers were substantially identical except for Theodosios' reply, which raised some additional arguments not included in the Reply filed by the Four Entities.) Given the similarity of the arguments, the Court treats the two motions together and refers to the motion in the singular.

[2] Given names are used to distinguish multiple parties with the same surname. No disrespect is intended.

[3] The Trustee filed two identical complaints—one in Harry's case (Adv. No. 2:15-ap-01406-ER) and the other in Theodosios' case (Adv. No. 2:15-ap-01404-ER). Unless otherwise indicated, all citations to the docket refer to Adv. No. 2:14-ap-01406-ER. As the complaints are identical, to avoid confusion the Court refers to the complaint in the singular.

[4] The action, *Lula Michaelides, et al. v. Theodosios Roussos, et al.*, was assigned Case No. BC054809.

Paula and Christine. *Id.* at ¶¶34–36. The Roussos Brothers then filed individual chapter 11 petitions[5] and filed a motion to sell the Properties to S.M.B. and O.F. free and clear of Michaelides' interest ("Sale Motion"). *Id.* at ¶¶37–39. On August 5, 1994, the Bankruptcy Court approved the sale, free and clear of Michaelides' interest ("Sale Order"). *Id.* at ¶40 and Exhibit 4. The Sale Order gave S.M.B. and O.F. protection as good-faith purchasers pursuant to §363(m). *Id.*

In approving the sale, the Bankruptcy Court relied upon declarations submitted by Theodosios and Harry, which falsely stated that the sale was an arms-length transaction; that neither Theodosios or Harry held any interest in S.M.B. and O.F.; and that the Properties were over-encumbered. *Id.* at ¶41. The Bankruptcy Court would not have approved the sale had it known that Theodosios and Harry controlled S.M.B. and O.F.; that the Properties were not over-encumbered; and that the sale motion was part of the Roussos Brothers' conspiracy to dispossess Michaelides of her fractional interest. *Id.* at ¶42.

On October 19, 1994, the Roussos Brothers executed a grant deed conveying title to the Abbott Kinney Property to O.F. *Id.* at ¶45. On November 29, 1994, the Roussos Brothers executed a grand deed conveying title to the San Vicente Property to S.M.B. *Id.* at ¶46.

The Roussos Brothers' chapter 11 cases were converted to chapter 7 on May 2, 1995.[6] Both Harry and Theodosios received discharges on January 2, 1996.[7] Michaelides' Amended State Court Judgment was excepted from discharge. *Id.* at ¶47. The cases were closed on June 27, 2002.[8]

On November 14, 2005, Michaelides conducted Theodosios' judgment debtor examination, during which Theodosios falsely testified that he and his brother Harry were not limited partners of S.M.B.; that he did not know who the limited partners of S.M.B. were; that he had not spoken to any of S.M.B.'s general partners; and that he and Harry had no interest in either S.M.B. or O.F. *Id.* at ¶49.

On November 14, 2005, Michaelides filed an alter ego action ("Alter Ego Complaint") in the Los Angeles Superior Court alleging that O.F. and S.M.B. were alter egos of the Roussos Brothers. The Alter Ego Complaint was dismissed. *Id.* at ¶50.

On July 20, 2006, Beaudry resigned from the California State Bar with charges pending relating to Beaudry's formation of sham corporations on behalf of his clients. *Id.* at ¶51.

---

[5] Theodosios and Harry's voluntary chapter 11 petitions were filed on June 14, 1993. The cases were jointly administered. Case No. 1:93-bk-31261-AG pertains to Harry; Case No. 1:93-bk-31265-AG pertains to Theodosios. When the cases were reopened in 2015, new case numbers were assigned: Case No. 2:15-bk-21624-ER pertains to Harry; Case No. 2:15-bk-21626-ER pertains to Theodosios.

[6] *See* Doc. No. 34, Case No. 2:15-bk-21624-ER (order denying confirmation of Harry and Theodosios' joint consolidated second amended plan of reorganization and converting the cases to chapter 7); Doc. No. 12, Case No. 2:15-bk-21626-ER (same order in Theodosios' jointly-administered case).

[7] *See* Doc. No. 101, Case No. 2:15-bk-21624-ER (discharge of Harry); Doc. No. 48, Case No. 2:15-bk-21626-ER (discharge of Theodosios).

[8] *See* Doc. No. 362, Case No. 2:15-bk-21624-ER (order closing Harry's case); Doc. No. 80, Case No. 2:15-bk-21626-ER (order closing Theodosios' case).

In September and December 2014, Michaelides conducted Harry's judgment debtor examination. Harry testified that he had no interest in the Properties or in O.F. and S.M.B. *Id.* at ¶53.

In the beginning of 2015, Michaelides discovered that an arbitration action, Case No. BS138099 ("Arbitration Action"), existed between Harry and Theodosios regarding management of the Properties. *Id.* at ¶56. On June 19, 2012, Harry and his spouse Christine commenced the Arbitration Action against Theodosios and his spouse Paula. *Id.* In connection with the Arbitration Action, David Haberbush, counsel for the Roussos Brothers, submitted a declaration stating that he had acted as legal counsel with respect to the Roussos Brothers' business operations pertaining to the Properties. *See* Declaration of David Haberbush at ¶1 (attached to the Complaint as Exhibit 8).

On June 18, 2015, Michaelides informed the United States Trustee ("UST") of the Arbitration Action. *See generally* Ex-Parte Motion to Reopen Chapter 7 Case under 11 U.S.C. §350(b) [Doc. No. 367, Case No. 2:15-bk-21624-ER]. On July 21, 2015, the UST moved to reopen Harry and Theodosios' chapter 7 cases and to appoint a Chapter 7 Trustee. The Court granted the motion on July 23, 2015. The Chapter 7 Trustee ("Trustee") filed the instant Complaints on August 4, 2015.

Based upon the foregoing allegations, the Trustee seeks to vacate the Sale Order for fraud on the court pursuant to Fed. R. Civ. P. 60(d)(3), and to vacate the grant deeds transferring ownership of the Properties to O.F. and S.M.B. Complaint at ¶¶61–68 (second claim for relief). Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. §2201, that the Properties are property of the Roussos Brothers' estates. *Id.* at ¶¶58–60 (first claim for relief). Plaintiff seeks to quiet title to the Properties as of August 5, 1994 (the date the Sale Order was entered) pursuant to California Code of Civil Procedure §761.010. *Id.* at ¶¶67–73 (third claim for relief). Plaintiff seeks turnover of the Properties, and the income from the Properties, pursuant to Bankruptcy Code §542. *Id.* at ¶¶74–79 (fourth claim for relief).

**Summary of Motion for Judgment on the Pleadings and Supporting Reply**
Defendants make the following arguments in support of the Motion:

The Trustee Lacks Standing Based Upon the *In Pari Delicto* Doctrine
In *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 355–56 (3d Cir. 2001), the Court observed that there are two types of actions that a trustee may pursue: "Such actions ... fall into two categories: (1) those brought by the trustee as successor to the debtor's interest included in the estate under Section 541, and (2) those brought under one or more of the trustee's avoiding powers." The Trustee's claims are not avoidance claims. Therefore, the Trustee has standing to pursue the claims only if they are "property of the estate" under §541.

The Trustee cannot maintain an action "against a third party that could not have been maintained by the debtor." *In re Gaudette*, 241 B.R. 491, 498 (Bankr. D.N.H. 1999). Applying the *in pari delicto* doctrine in effect in New Hampshire, the Gaudette Court held that the trustee lacked standing to sue co-conspirators with the debtor:

> The Trustee also lacks standing under the New Hampshire doctrine of *in pari delicto*. To have standing to assert a cause of action under New Hampshire law, a person must plead and prove that he suffered some injury to his legal rights. *See Roberts v. General Motors Corp.*, 138 N.H. 532, 535, 643 A.2d 956 (1994) ("In evaluating whether a party

has standing to sue, we focus on whether the plaintiff suffered a legal injury against which the law was designed to protect."). Under the New Hampshire doctrine of *in pari delicto*, the Debtor, as an alleged co-conspirator, would not be able to maintain a cause of action for civil conspiracy and name either himself or a co-conspirator as a defendant.

New Hampshire law forbids co-conspirators from obtaining judicial redress against one another: "The parties to the fraudulent transaction, being *in pari delicto*, are left by the law in the position in which they have placed themselves." *Gaudette*, 241 B.R. at 500.

The *in pari delicto* doctrine under New Hampshire law is the same as the doctrine under California law. *See, e.g.*, *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1143 (2005) ("The doctrine of *in pari delicto* dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them.").

The *in pari delicto* doctrine has been widely applied by bankruptcy courts to deny trustees and other successors to debtors standing to pursue claims on behalf of bankruptcy estates. In *USACM Liquidating Trust v. Deloitte & Touche*, 754 F.3d 645 (9th Cir. 2014), the court held that a Chapter 11 liquidating trustee lacked standing to pursue the Debtor's accounting firm for aiding and abetting in the debtor's breach of fiduciary duty:

> *In pari delicto* is a doctrine which generally provides that "[i]n case of equal fault the condition of the party defending is the better one." *Kardoh v. United States*, 572 F.3d 697, 700 (9th Cir.2009) (quotation omitted). It has been recognized as an affirmative defense which "prohibits plaintiffs from recovering damages resulting from their own wrongdoing." *Nisselson v. Lernout*, 469 F.3d 143, 151 (1st Cir.2006). The doctrine generally arises out of the theory that courts should not become involved in resolving disputes among wrongdoers, but instead should leave them where their own wrongdoing has left them. *Id.* Denying judicial relief to a wrongdoer "is an effective means of deterring illegality." *Id.*

In *In re Mortgage Fund '08 LLC*, 527 B.R. 351, 366–67 (N.D. Cal. 2015), a district court acknowledged that the Ninth Circuit had not directly addressed the application of the *in pari delicto* doctrine to a bankruptcy trustee, but concluded that the Ninth Circuit would likely follow other circuits in applying the doctrine:

> Although the Ninth Circuit has not directly addressed the issue, every circuit to have considered the question has held that a defendant "sued by a trustee in bankruptcy may assert the defense of *in pari delicto*, if the jurisdiction whose law creates the claim permits such a defense outside of bankruptcy."…
>
> The Ninth Circuit has not addressed, in a published opinion, the applicability of the *in pari delicto* doctrine to claims brought by a liquidating trustee. However, in an unpublished decision, the Ninth Circuit affirmed a decision by Judge Chesney of this Court in which she held that the *in pari delicto* defense could be asserted against a bankruptcy trustee because "[w]here, as here, a bankruptcy trustee files claims on behalf of the bankruptcy estate, § 541(a)(1) ... provides that the trustee's rights are no greater than the rights of the debtor." *In re Crown Vantage, Inc.*, No. 023836 MMC, 2003 WL 25257821, at *6 (N.D.Cal. Sept. 25, 2003), aff'd *Crown Paper Liquidating Trust v. Pricewaterhousecoopers LLP*, 198 Fed. Appx. 597 (9th Cir.2006) ("We affirm for the reasons set forth in the well-reasoned district court orders filed on September 25, 2003,

July 12, 2004, March 28, 2005 and March 30, 2005, in this consolidated appeal."), cert. denied, *Crown Paper Liquidating Trust v. PricewaterhouseCoopers*, 549 U.S. 1253, 127 S.Ct. 1381, 167 L.Ed.2d 160 (2007).

The *in pari delicto* doctrine applies here to bar the Trustee from pursuing the Complaint. The Trustee stands in the shoes of Harry and Theodosios, and is subject to any defenses that could be asserted against Harry and Theodosios. As the alleged master-minds of the conspiracy to commit fraud on the court, Harry and Theodosios were *in pari delicto* with the Four Entities.

The *in pari delicto* doctrine is applicable to the fraud on the court claim. Although there are few cases in which both issues arise, courts have held that the doctrine applies to preclude a claim for fraud on the court based upon false testimony. In *Panteley v. Garris, Garris & Garris, P.C.*, 447 N.W.2d 864 (1989), the Michigan Court of Appeals held that a client could not recover from her attorneys in a malpractice action, where the client perpetrated a fraud on the court by lying about her residency status in a divorce action. The client gave the false testimony upon the advice of her attorneys. The *Pantely* court concluded that the client's malpractice claims were barred by the doctrine of *in pari delicto*. *Id* at 869.

The claims asserted in the Complaint are subject to the *in pari delicto* doctrine even though they arose subsequent to the Roussos Brothers' Chapter 11 petitions. The cases holding that the Trustee's standing is defined as of the filing of the bankruptcy case do not apply here. The issue of when to define the Trustee's standing with respect to claims arising post-petition but pre-conversion is undecided in the Ninth Circuit. *See In re Estate Fin. Mortgage Fund, LLC*, 565 F. App'x 628, 630 (9th Cir. 2014) ("Given our disposition, we need not resolve the trustees' arguments that the *in pari delicto* and unclean hands defenses may never apply to bankruptcy trustees or to claims brought by trustees that arise post-petition.").

The structure of the Bankruptcy Code suggests that the *in pari delicto* doctrine applies to post-petition claims. First, §541(a)(7) provides that estate property includes "any interest in property that the estate acquires after the commencement of the case." If, for example, a Chapter 11 debtor entered into a contract defrauding a buyer into purchasing goods, a subsequently-appointed Chapter 7 Trustee would be subject to the purchaser's fraudulent inducement defense to the trustee's claim for the purchase price, even though that defense arose post-petition. Second, in a case that has been converted from Chapter 11 to Chapter 7, claims against the debtor or the estate that arise post-petition but pre-conversion are treated as though they had arisen pre-petition. §348(d). Post-petition but pre-conversion claims held by Harry and Theodosios' estates (such as the fraud on the court claim) should similarly be treated as a pre-petition claim held by the estates—meaning that the *in pari delicto* doctrine would apply.

The Court's Rejection of the Wagoner Rule Does Not Preclude Application of the Doctrine of *In Pari Delicto*

In its previous ruling denying the Defendants' motions to dismiss, the Court rejected the Wagoner Rule:

> Finally, the Court rejects Defendants' argument that the Trustee lacks standing to pursue the fraud and breach of fiduciary claims. Defendants invoke the Wagoner Rule, a Second Circuit doctrine holding that the Trustee lacks standing to assert claims predicated upon injury to creditors. In *CarrAmerica Realty Corp. v. Nvidia Corp.*, 302 F. App'x 514, 517 (9th Cir. 2008), *as amended* (Jan. 22, 2009), *as amended* (Mar. 10, 2009), the Ninth Circuit declined to follow *Wagoner*:

> The Creditors argue that Trustee standing is barred under *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 120 (2d Cir.1991) ('A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation.'). However, the *Wagoner* rule has been much criticized and we decline to follow it. *See In re Senior Cottages of Am., LLC,* 482 F.3d 997, 1003–04 (8th Cir.2007) (listing authorities rejecting *Wagoner* and concluding that the *in pari delicto* defense has nothing to do with trustee standing).

*In re Roussos*, 541 B.R. 721, 736–37 (Bankr. C.D. Cal. 2015).

The Court's rejection of the Wagoner Rule is not grounds to reject the application of the *in pari delicto* doctrine. The Wagoner Rule is completely irrelevant to these adversary proceedings, so the Court's disregard of the Wagoner Rule is immaterial. The Wagoner Rule applies in a corporate setting in which the acts of officers or directors are imputed to a corporation. Harry and Theodosios are not corporate debtors, so there is no need to apply the Wagoner Rule.

The Complaint Cannot State a Claim Because the 1994 Sale Did Not Damage Harry and Theodosios' Bankruptcy Estates

To state a claim for fraud on the court, the Trustee must show that a "grave miscarriage of justice occurred." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). No grave miscarriage of justice could have occurred because at the time the Properties were sold in 1994, there was no equity for unsecured creditors. The 1994 Sale Motion was supported by an appraisal from George Ryon showing that the Properties' value was less than the outstanding secured indebtedness. Lula Michaelides had every reason to oppose the Sale Motion's contention that the Properties lacked equity, because she wanted to prevent the sale of the Properties free and clear of her percentage interests in the Properties. Yet Michaelides failed to question the appraisal evidence submitted in support of the Sale Motion. Nor did Michaelides contest the Sale Motion's representation that the Properties had been adequately marketed. Michaelides opposed the Sale Motion only on the ground that the Properties were not property of Harry and Theodosios' estates because they were held by a partnership, rather than held individually by Harry and Theodosios.

The Sale Order conclusively established that the Properties lacked equity in 1994, and that the Properties had been adequately marketed. The Trustee is barred by the doctrines of res judicata and collateral estoppel from relitigating these issues. Further, even though the Trustee was not a party to the Sale Motion, he is bound by the Sale Order because a §363 sale is *in rem* in nature and is effective against the world. *See In re Ray*, 2008 WL 8449610, at *10–11 (B.A.P. 9th Cir. Dec. 31, 2008), rev'd and remanded on other grounds, 624 F.3d 1124 (9th Cir. 2010) ("Furthermore, '[a] bankruptcy sale under 11 U.S.C. §363, free and clear of all liens, is a judgment that is good as against the world, not merely as against the parties to the proceedings.'").

All the cases in which fraud on the court has been found have involved an element of damages to the opposing party. *See, e.g., In re Levander*, 180 F.3d 1114 (9th Cir. 1999) (fraud damaged debtors by preventing them from recovering court-awarded attorneys' fees and costs); *Anand v. CITIC Corp. (In re Intermagnetics Am., Inc.)*, 926 F.2d 912 (9th Cir. 1991) (fraud caused bankruptcy court to approve a sale for $10 million less than would otherwise have been paid); *Dixon v. C.I.R.*, 316 F.3d 1041, 1043 (9th Cir. 2003) (fraud resulted in a determination that taxpayers were liable for assessed deficiencies and penalties); *Hazel-Atlas Glass Co. v. Hartford-*

*Empire Co.*, 322 U.S. 238 (1944) (fraud resulted in party losing suit for patent infringement). By contrast, in *United States v. Estate of Stonehill*, the court declined to find that the government had committed fraud on the court where the government's misrepresentations did not result in harm to the opposing party. 660 F.3d 415, 452 (9th Cir. 2011). Here, there are no damages because the Sale Order established that the Properties lacked equity.

**Summary of Trustee's Opposition**
   The Trustee makes the following arguments in opposition to the motion for judgment on the pleadings:

The *In Pari Delicto* Doctrine Does Not Apply to Post-Petition Claims
   While there is no binding Ninth Circuit precedent regarding the application of the *in pari delicto* doctrine to post-petition claims, other courts throughout the country have rejected the defense in this context. For example, in *Kremen v. Hartford Mut. Ins. Co. (In re J.T.R. Corp.)*, 958 F.2d 602, 604 (4th Cir. 1992), J.T.R. Corporation filed a Chapter 11 petition. J.T.R. operated a bar and grill, which the owner, Kenny, deliberately set on fire after the petition was filed. A Chapter 11 Trustee was subsequently appointed who sought to recover fire insurance proceeds for the benefit of the estate. The Fourth Circuit held that Kenny's arson was not attributable to the estate. The court found that since the arson did not take place until after the filing of the petition, the Trustee was not barred from recovering under the policy.
   The wrongdoer in *JTR* was the debtor's principal, whereas the wrongdoers here, the Roussos Brothers, were debtors-in-possession. Nonetheless, as explained by the court in *Rosen v. Gemini Title & Escrow, LLC (In re Hoang)*, 449 B.R. 850, 856–57 (Bankr. D. Md. 2011), *JTR*'s reasoning applies to debtors-in-possession:

> To be sure, in *J.T.R.,* Kenny, the wrongdoer, was the principal of the debtor, while J.T.R. was the debtor-in-possession. *Id.* Here, the Debtor, the alleged wrongdoer, is herself the debtor-in-possession. But upon the filing of her chapter 11 petition, the Debtor wore two hats, that of the debtor and that of the debtor-in-possession. On the petition date, the Properties became property of the estate, and the Debtor personally lost all legal and equitable interest in them…. The Debtor became the fiduciary of the estate and was obligated to act in the interests of the creditors. The Debtor, however, also existed—to use that term—in her personal capacity and separate from her status as debtor-in-possession. The Complaint alleges that the Debtor sold the Properties and secreted the proceeds strictly in her personal capacity as debtor, to benefit herself, without regard to her position as debtor-in-possession. In that regard, her alternate status as debtor was no different than that of Kenny, who acted individually in burning the estate's property, rather than in his capacity as a responsible person who controlled the estate.

*Hoang*, 449 B.R. at 856–57.
   *Grubin v. Rattet (In re Food Mgmt. Grp., LLC)*, 380 B.R. 677 (Bankr. S.D.N.Y. 2008), reached the same result. The debtor was a Dunkin' Donuts franchisee owned by the Gianopoulos family. The debtor settled a lawsuit with the franchisor, agreeing that the Gianopoulos family would have no further involvement with Dunkin' Donuts franchises. The bankruptcy court approved bidding procedures to facilitate the sale of the debtor's assets. Among the procedures was a requirement, based on the settlement, that no member of the Gianopoulos family could submit a bid. Bidders were required to certify that they were not affiliated with the Gianopoulos family. After the court approved sale fell through and a Chapter 11 Trustee was appointed, it

emerged that one of the key bidders was affiliated with the Gianopoulos family. The trustee filed a complaint against numerous defendants, including a law firm alleged to have conspired with the Gianopoulos family to submit the unauthorized bid.

The *Food Mgmt.* court denied the defendants' motion to dismiss the Chapter 11 Trustee's complaint on the grounds that it was barred by the *in pari delicto* doctrine, reasoning that the post-petition acts of the Gianopouloses were not properly imputed to the Chapter 11 Trustee. *Food Mgmt.*, 380 B.R. at 699. *See also Bezanson v. Thomas (In re R & R Associates of Hampton)*, 402 F.3d 257, 264 (1st Cir. 2005) (concluding, albeit without discussing the *in pari delicto* doctrine, that the Chapter 7 Trustee in a case converted from Chapter 11 could bring an action against the law firm that represented the debtor while the case was proceeding under Chapter 11; the action asserted that the law firm breached its fiduciary duties to the debtor-in-possession).

The cases upon which the Defendants rely, in which the courts held that the *in pari delicto* defense applied, all relate to wrongful acts committed before the petition was filed. Here, the Roussos Brothers' wrongful acts were committed post-petition, making those cases inapplicable.

The inapplicability of the *in pari delicto* defense is further established by the fact that the Trustee's claims in this case arise under §541(a)(7), not under §541(a)(1). Section 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." This includes pre-petition causes of action that pass to the estate upon the filing of the petition. Under §541(a)(1), the Trustee acquires pre-petition causes of action subject to any already existing defects—such as an *in pari delicto* defense. However, the Trustee's claims here arise under §541(a)(7), which provides that property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." The Trustee's fraud on the court claim arose post-petition, after the Roussos Brothers obtained the Sale Order. The claim for recovery of the Properties belongs only to the estate under §541(a)(7); it never belonged to the Roussos Brothers. Consequently, the *in pari delicto* defense cannot apply to the claim.

Equity Precludes the Defendants from Invoking the *In Pari Delicto* Defense

The *in pari delicto* defense is an equitable defense. Parties, such as the Roussos Brothers, who have acted inequitably are barred from asserting an equitable defense. *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010) ("The doctrine of unclean hands also can bar a defendant from asserting an equitable defense.").

The *In Pari Delicto* Defense Cannot Apply Against Alter Ego Parties

*In pari delicto*, which measures wrongdoing between two parties, inherently requires the presence of more than one party. The Complaint alleges that the Roussos Brothers and the Four Entities were alter egos of one another. The Complaint's allegations must be deemed true in the context of a motion for judgment on the pleadings. The Four Entities, as the alter egos of the Roussos Brothers, could never invoke the *in pari delicto* defense against the Roussos Brothers, because they are one and the same. Accordingly, the defense could never be applied against the Trustee.

The Sale Order Does Not Bar the Complaint

Defendants incorrectly argue that the Trustee's claims must be dismissed because he is barred from collaterally attacking the Sale Order under Rule 60(b). The cases upon which

Defendants rely involved attacks on sale orders under Rule 60(b). Those cases are inapposite, because the Trustee is using Rule 60(d)(3), not Rule 60(b), to vacate the Sale Order. Further, *In re Hi Tech Fleet Serv., Inc.*, 339 B.R. 428 (Bankr. E.D. Mich. 2006), cited by the Defendants, heavily relies upon *Gekas v. Pipin (In re Met-L-Wood Corp.)*, 861 F.2d 1072 (7th Cir. 1998). The Court has previously declined to follow *Met-L-Wood*.

<u>The Sale Order Did Not Conclusively Establish that the Properties Were Sufficiently Marketed and Were Over-Encumbered</u>
  In approving the Sale Order in 1994, the Bankruptcy Court did not make specific findings that the Properties were sufficiently marketed and were over-encumbered. The court entered the Sale Order only because it was mislead by the fraud engineered by the Four Entities and the Roussos Brothers. At trial, the Trustee will demonstrate that creditors were damaged by the fraud on the court.

**Summary of the Defendants' Reply**[9]
<u>The Trustee Cannot Shield the Claims from Application of the *In Pari Delicto* Doctrine by Invoking §541(a)(7)</u>
  The Trustee's contention that the claims are property of the estate under §541(a)(7), and that the claims never belonged to the Roussos Brothers, is incorrect. "Section 541(a)(7) makes property of the estate any interest in property that the estate (not the debtor) acquires after the petition date…. [F]or the after-acquired interested to be considered property of the estate under §541(a)(7), the interest (1) must be created with or by property of the estate; (2) acquired in the estate's normal course of business; or (3) otherwise be traceable to or arise out of any prepetition interest included in the bankruptcy estate." *In re Neidorf*, 524 B.R. 369, 371–72 (BAP 9th Cir. 2015). The claims asserted by the Trustee do not fall within these three exceptions. The claims are based upon an alleged post-petition conspiracy. They were not created with or by pre-petition property, and were not acquired in the estate's normal course of business. They are not otherwise traceable to any prepetition interest.
  Because the fraud on the court claim is not estate property under §541(a)(7), the Trustee's attempt to shield the claim from application of the *in pari delicto* doctrine fails. The claim for recovery of the Properties initially belonged to the Roussos Brothers. Therefore, the Trustee acquires that claim subject to defenses that could be asserted against the Roussos Brothers, including the *in pari delicto* defense.

<u>Equity Does Not Preclude Invocation of the *In Pari Delicto* Defense</u>
  Whenever a defendant invokes the *in pari delicto* doctrine to argue that the plaintiff lacks standing, that defendant is equally culpable with the plaintiff. As such, the defendant always is alleged to have acted inequitably when that defendant raises the *in pari delicto* defense, yet the defendant is not precluded from doing so.

<u>The *In Pari Delicto* Doctrine May Be Asserted By Alleged Alter Egos</u>
  The Trustee manufactures a false syllogism in arguing (1) the *in pari delicto* doctrine requires wrongdoing by the debtors and other parties; (2) the Trustee has alleged that the

---

[9] Certain of the arguments contained in the reply are summarized in the previous section, "Summary of Motion for Judgment on the Pleadings and Supporting Reply."

Roussos Brothers are the alter egos of the Four Entities, so they are one and the same; and (3) therefore, there can be no comparison of wrongdoing or equal culpability between the defendants.

California law contradicts the Trustee's arguments. In *Casey v. US Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1143–44 (2005), the court held that the *in pari delicto* doctrine could apply in the presence of alter ego allegations.

Rule 60(d) Does Not Permit the Court to Rescind the Transfer of Real Property

The relief sought by the Trustee—return of the Properties—is not permitted under Rule 60. Rule 60 permits only setting aside of the prior order; it does not allow additional affirmative such returning the Properties to the estate. *See In re Ware*, 117 B.R. 1, 2 (Bankr. D.D.C. 1990) (holding that an order requiring a party to reconvey property to the debtor's estate was beyond the powers of Rule 60).

## II. Findings and Conclusions

At the outset, the Court notes that certain of the arguments raised in the Motion are thinly repackaged versions of arguments that have been previously rejected by the Court. The Court has previously rejected similar (though not identical) arguments regarding collateral estoppel and the Trustee's standing to pursue the Complaint.[10]

Civil Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is the functional equivalent of a Rule 12(b)(6) motion to dismiss. *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012). "'Judgment on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.' Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal citations omitted).

Therefore, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). To state a plausible claim for relief, a complaint must satisfy two working principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice…. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere

---

[10] *See generally* Ruling Denying Motion to Dismiss Adversary Proceeding and Notice of Motion and Joint Motion to Dismiss and Strike Action [Doc. No. 194]; Ruling Granting Motion for Preliminary Injunction [Doc. No. 87]; and Amended Memorandum of Decision Denying Motions to Dismiss [Doc. No. 71].

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Civil Rule 8(a)(2)).[11]

Notwithstanding the Inapplicability of the Wagoner Rule, the Court Must Still Determine Whether the *In Pari Delicto* Doctrine Bars the Complaint

Although the Wagoner Rule and the *in pari delicto* doctrine are closely related, they are distinct legal principles. Under both principles the Chapter 7 Trustee may be barred from recovering against a third party malfeasor where the debtor is also at fault. *Grubin v. Rattet (In re Food Mgmt. Grp., LLC)*, 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008). "*In pari delicto* is a state law equitable defense analogous to unclean hands 'rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct.' It is based on the idea that 'where parties are equally at fault, the defending party is in the stronger position.'" *Food Mgmt.*, 380 B.R. at 693. The Wagoner Rule is a federal rule of standing which provides "that when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991). The rationale for the rule "'derives from the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation.' 'Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the *Wagoner* rule bars a trustee from suing to recover for a wrong that he himself essentially took part in.'" *Food Mgmt.*, 380 B.R. at 695 (internal citations omitted).

In its ruling denying the Defendants' motion to dismiss, the Court rejected the Defendants' argument that the Wagoner Rule deprived the Trustee of standing. The Court relied upon *CarrAmerica Realty Corp. v. Nvidia Corp.,* 302 Fed.Appx. 514, 517 (9th Cir.2008) (a case not selected for publication in West's Federal Reporter but published in the Federal Appendix), in which the Ninth Circuit declined to apply the Wagoner Rule. *See In re Roussos*, 541 B.R. 721, 736 (Bankr. C.D. Cal. 2015).

The Court further notes that the Wagoner Rule cannot apply to these proceedings because Harry and Theodosios are individual debtors, not corporate debtors. The Wagoner Rule is predicated on the principle that the misconduct of managers cannot be imputed to the corporation, and therefore can have no application where the debtor is an individual. However, because the Wagoner Rule and *in pari delicto* doctrine are distinct legal principles, the Court must still determine whether the *in pari delicto* defense bars the Complaint.

The *In Pari Delicto* Defense Does Not Bar the Complaint

The *in pari delicto* defense does not apply to the conduct alleged in the Complaint. First, the alleged conduct occurred post-petition. Numerous courts have held that the *in pari delicto* defense is available only with respect to conduct that occurred pre-petition. *See, e.g.*, *Kremen v. Hartford Mut. Ins. Co. (In re J.T.R. Corp.)*, 958 F.2d 602, 604 (4th Cir. 1992); *Rosen v. Gemini Title & Escrow, LLC (In re Hoang)*, 449 B.R. 850, 856–57 (Bankr. D. Md. 2011); *Grubin v. Rattet (In re Food Mgmt. Grp., LLC)*, 380 B.R. 677 (Bankr. S.D.N.Y. 2008). The cases cited by

---

[11] Consistent with the standard for deciding a motion for judgment on the pleadings, the Court assumes that the well-pleaded allegations in the Complaint are true. The Court's discussion of the Complaint reflects this assumption. To avoid cumbersome sentences, that discussion does not always qualify the recitation of the Complaint's allegations with adjectives such as "allegedly."

the Defendants, in which the Trustee was barred by the *in pari delicto* defense, do not apply because the alleged wrongful conduct in those cases occurred pre-petition.

The facts alleged here are similar to the facts alleged in *Giacometti v. Arton Berm, Ltd. (In re Sukamto Sia)*, 349 B.R. 640 (Bankr. D. Hawaii 2006). In *Sia*, Sukamto Sia filed a Chapter 11 petition and acted as debtor-in-possession for approximately two months until a Chapter 11 trustee was appointed. Several months after the Chapter 11 trustee was appointed, the case was converted to Chapter 7. The court held that the Chapter 7 Trustee was not precluded from pursuing an action against Sia and other conspirators for misappropriating property from creditors and from the bankruptcy estate:

> For purposes of the present bankruptcy adversary proceeding, the issue of the trustee's standing to attack alleged civil conspiracies turns on timing. The timing question is whether the activities of the conspirators occurred prebankruptcy or after Sia filed his petition.
>
> The debtor, Sia, is one of the alleged conspirators. Therefore, the doctrine of *in pari delicto* would prevent prebankruptcy claims against Sia and his co-conspirators from passing to the bankruptcy estate. Claims, if any, against prepetition co-conspirators of the debtor would belong to individual prebankruptcy creditors. …
>
> As to postpetition activities of the debtor and co-conspirators, the result is different. The trustee has standing to sue, because the injury is to the bankruptcy estate. The property of a chapter 7 bankruptcy estate belongs to the trustee, not to the debtor. If the trustee's conspiracy claims are based upon postpetition activities of the conspirators, it does not matter whether or not the debtor is one of the conspirators. The debtor's postpetition unclean hands do not impair the ability of the trustee in bankruptcy to pursue the debtor and debtor's co-conspirators.

*In re Sia*, 349 B.R. 640, 655 (Bankr. D. Haw. 2006).

As in *Sia*, the fraud alleged here occurred while the Roussos Brothers were acting as debtors-in-possession. As held by the *Sia* court, had the Roussos Brothers' fraud occurred pre-petition, the subsequently appointed Trustee would take any claims based on that fraud subject to the *in pari delicto* defense. But since the fraud occurred post-petition, the fraud is not imputed to the Trustee. As explained by the court in *Rosen v. Gemini Title & Escrow, LLC (In re Hoang),* 449 B.R. 850, 856–57 (Bankr. D. Md. 2011), upon the commencement of a Chapter 11 petition, debtors become fiduciaries to the estate and are obligated to act in the interests of creditors. If debtors take actions that are harmful to the estate, they are not acting as fiduciaries. *Id.* at 858. Such actions should be construed as having been taken in the debtor's personal capacity, rather than in their capacity as an estate fiduciary. *Id.* Therefore, the harmful actions cannot be imputed to any subsequently appointed Trustee. *Id.*

It is common for Chapter 11 debtors-in-possession to be divested of their fiduciary responsibilities, either through appointment of a Chapter 11 Trustee or conversion of the case to Chapter 7. That appointment or conversion often occurs as a result of the debtor's misappropriation of estate assets. Adopting Defendants' theory would prevent trustees from commencing actions to recover the misappropriated assets. Such an outcome would hamper trustees' ability to liquidate assets for the benefit of creditors.

<u>The Fraud on the Court Claim is Property of the Estate that the Trustee Has Standing to Pursue</u>

Actions brought by the Trustee on behalf of the estate generally fall into two categories: "(1) those brought by the trustee as successor to the debtor's interest included in the estate under

section 541 or those assigned to the trustee against third parties for the benefit of the estate; and (2) those brought under one or more of the trustee's avoiding powers." *Collier on Bankruptcy* ¶323.03[2]. An action brought by the Trustee as successor to the debtor's interest would be subject to defenses, including *in pari delicto*, that could be asserted against the debtor.

However, the Trustee may also pursue an action based on an "interest in property that the estate acquires after the commencement of the case." §541(a)(7). For an "after-acquired interest to be considered property of the estate under § 541(a)(7), the interest (1) must be created with or by property of the estate; (2) acquired in the estate's normal course of business; or (3) otherwise be traceable to or arise out of any prepetition interest included in the bankruptcy estate." *MacKenzie v. Neidorf (In re Neidorf)*, 534 B.R. 369, 371–72 (B.A.P. 9th Cir. 2015).

The Court finds that the fraud on the court claim—and the related claims for turnover, declaratory relief, and quiet title—are property of the estate under §541(a)(7). The Trustee alleges that the Roussos Brothers made fraudulent representations in connection with the sale of estate assets (the Properties). Because the claim derives from the sale of an estate asset, it was "created with … property of the estate." *Neidorf*, 534 B.R. at 372.[12] The fraud on the Court claim was property of the estate from the outset and was never property of the Roussos Brothers. It makes no sense to classify a claim against a debtor for fraudulent conduct as a property interest belonging to that debtor. Under this reasoning, the state's right to seek the imposition of regulatory fines against a debtor would also be classified as the debtor's property—an absurd result. A debtor's right to sue others is, of course, a property interest of the debtor; but a debtor's exposure to lawsuits from others, including the Trustee, is not.

The cases cited by the Defendants in which the courts found that post-petition assets were not property of the estate bear little similarity to the instant case. In *Sliney v. Battley (In re Schmitz)*,

---

[12] Defendants argue that there is not a sufficient relationship between the Properties and the fraud on the court claim in order for the fraud on the court claim to qualify as property of the estate under *Neidorf*. Defendants assert that the fraud on the court claim was created by an intervening post-petition event and therefore lacks a sufficient causal connection to the Properties to be considered property of the estate. The Court disagrees, and finds that there is a sufficient connection between the Properties and the fraud on the court claim to make the fraud on the court claim property of the estate.

In *Neidorf*, the Debtor's home was property of the estate. The Debtor received a postpetition payment from the mortgage lender on the home in connection with a national settlement between banking regulators and certain financial institutions. The *Neidorf* court found that the settlement payment was not property of the estate, reasoning that "Debtor became entitled to the payment only as a result of qualifying events occurring after her bankruptcy filing." 534 B.R. at 372.

Unlike the settlement payment in *Neidorf*, the fraud on the court claim did not arise as a result of the actions of unrelated third parties. Instead, the fraud on the court claim arose as a result of the alleged fraudulent representations of the debtors-in-possession, the Roussos Brothers. Those representations were made by the Roussos Brothers in connection with the administration of the Properties, an asset of the estate. By contrast, the settlement payment in *Neidorf* was not negotiated in the context of the Debtor's bankruptcy; it arose pursuant to a nationwide settlement between banks and regulators affecting thousands of properties. Accordingly, there is a far closer nexus between the fraud on the court claim and the Properties than there was between the Debtor's home and the settlement payment in *Neidorf*.

270 F.3d 1254, 1258 (9th Cir. 2001), the court found that fishing rights awarded to the debtor post-petition were not property of the estate under §541(a)(7). The Trustee had argued that the fishing rights were estate property because they were calculated based on the debtor's pre-petition fishing activities. The *Schmitz* court disagreed, noting that the regulations under which the fishing rights were awarded were enacted post-petition.

Unlike the fraud on the court claim, the fishing rights in *Schmitz* constitute a property interest that clearly benefits the debtor. As discussed above, it does not make sense to classify the fraud on the court claim as property of the Roussos Brothers. The claim is adverse to the interests of the Roussos Brothers; it does not provide them with any of the benefits associated with a property interest.[13] Like *Schmitz*, the other cases cited by the Defendants are inapposite since they all involve property interests that were beneficial to the debtors.

The fact that the Trustee's claims were never property of the debtors is an additional reason why the *in pari delicto* doctrine cannot apply. The *in pari delicto* doctrine applies in cases where the Trustee acquires a debtor's interest in a cause of action. If the debtor never had an interest in the cause of action—as is the case here—there is no basis for imputing the debtor's conduct to the Trustee.

The Structure of §348 Does Not Compel Application of the *In Pari Delicto* Doctrine

Defendants argue that the post-petition but pre-conversion fraud on the court cause of action should be treated as a pre-petition claim. Defendants note that under §348(d), post-petition but pre-conversion claims against the debtor or estate are treated as though they arose pre-petition. Defendants assert that by analogy that fraud on the court cause of action should also be treated as though it arose pre-petition—meaning that the *in pari delicto* doctrine would apply.

There are good reasons to treat post-petition pre-conversion causes of action differently from post-petition pre-conversion claims. By treating post-petition pre-conversion claims as though they had been filed pre-petition, §348(d) facilitates the Bankruptcy Code's debt relief objectives by enabling post-petition claims to be discharged where a Chapter 11 case has been converted to Chapter 7. But applying the same policy to post-petition causes of action would frustrate the Trustee's ability to liquidate estate assets for the benefit of creditors, particularly in cases where the debtors-in-possession engaged in wrongdoing during the case's Chapter 11 phase. The Trustee's ability to liquidate assets is another important policy of the Bankruptcy Code that must be respected. The Court declines to extrapolate from §348(d) a construction that would defeat that important Bankruptcy Code objective.

The Sale Order Does Not Preclude the Trustee from Pursuing the Complaint

Defendants argue that the Sale Order conclusively established that the Properties were over-encumbered and were adequately marketed. In support of this claim, Defendants note that Michaelides had every incentive to contest the Roussos Brothers' representations that the properties were over-encumbered and were adequately marketed, but failed to do so. Defendants further argue that the Trustee is collaterally estopped from attacking the Sale Order's finding that the Properties were over-encumbered. Defendants contend that, given the lack of equity, any

---

[13] It is true that property interests do not always provide value to their owners. A contaminated parcel of land burdened by CERCLA liability might subject the owner to far more in cleanup costs than the parcel would ever be worth. But land at least offers the possibility of value. Adverse litigation claims will never have value to the party they are asserted against.

alleged fraud committed by the Roussos Brothers could not have damaged their estates. In the absence of damages, Defendants assert, the Complaint must be dismissed.

The Complaint alleges that the Roussos Brothers represented to the Bankruptcy Court that the Properties were over-encumbered, when the true fact was that the Properties were not over-encumbered. Complaint at ¶42.[14] These allegations are presumed to be true for purposes of the motion for judgment on the pleadings. If the Properties were not over-encumbered, it follows that the sale of the Properties on the terms set forth in the Sale Order damaged the Roussos Brothers' estates. The Sale Order approved the sale of the Abbott Kinney Property to O.F. Enterprises, Ltd., for $500 plus the assumption of obligations to the first trust deed holder and delinquent taxes. Sale Order (Complaint at Ex. 4). The Sale Order approved the sale of the San Vicente Property to S.M.B. Investor Associates, L.P., for no cash plus the assumption of obligations to the first trust deed holder, the assumption of delinquent taxes, and the repair of earthquake damages. *Id.* If the Properties were not over-encumbered, consideration consisting only of assumption of the liabilities against the Properties (plus a de minimis cash amount in the case of the Abbott Kinney Property) would not have been adequate. The Bankruptcy Court would not have approved a sale on such terms. The Bankruptcy Court would instead have required that the Properties be sold for an amount sufficient to yield some surplus to the estate. Accordingly, the Complaint sufficiently alleges that Roussos Brothers' estates were damaged by the sale.[15]

Defendants' contention that the Trustee is collaterally estopped from arguing that the Properties were not over-encumbered suffers from an additional defect. The Trustee seeks to invalidate the Sale Order on the grounds that it was procured by fraud on the court. Among the alleged fraudulent representations made by the Roussos Brothers to procure the Sale Order was the statement that the Properties were not over-encumbered. Applying collateral estoppel to insulate the alleged false representations from attack would eviscerate the Court's ability to cleanse itself of fraud. Under Defendants' theory, the fraud on the court remedy would effectively disappear. Any party asserting fraud on the court would be collaterally estopped by the findings in the order that was procured by fraud. It would be absurd to allow fraudulent representations to remain immune from attack simply because they became memorialized in an order.

Michaelides' failure to challenge the Roussos Brothers' representations that the Properties were not over-encumbered does not change the outcome. To hold otherwise would allow parties to escape the consequences of fraudulent representations simply because those representations were not challenged at the time they were made.

---

[14] Defendants point out that the Complaint does not allege that the appraiser's declarations submitted in support of the Sale Motion were inaccurate. The absence of that allegation is immaterial. It follows from the allegation that the Properties were not over-encumbered that the appraiser's declarations understated the value of the Properties. If it is true that the Properties were sold at an understated price, the Roussos Brothers' estates would have been damaged. At the pleading stage, the Trustee is not required to attack the appraiser's declarations. Requiring that level of specificity is inconsistent with Civil Rule 8(a)(2) (providing that a complaint must contain "a *short* and plain statement of the claim showing that the pleader is entitled to relief").

[15] At trial, Defendants will doubtlessly contend that the Properties were over-encumbered and could not have generated a surplus for the estate. However, the Court cannot grant a Motion for Judgment on the Pleadings based on a disputed issue of fact.

At oral argument, Defendants contended that Judge Greenwald's entry of the Sale Order was based on additional evidence aside from the allegedly false declarations of the Roussos Brothers. This additional evidence, Defendants asserted, collaterally estops the Trustee from seeking to vacate the Sale Order. Defendants pointed to the declaration of real estate broker Perry Johnson regarding the marketing of the properties, the declaration of MAI appraiser George Ryon valuing the Properties, and an estimate of the costs of repairing the earthquake damage to the San Vicente Property prepared by Arthur E. Bell Carpentry. According to Defendants, entry of the Sale Order could be upheld based upon the Johnson and Ryon declarations and the estimates of earthquake damage. Therefore, Defendants argue, even if the Court determined that the Roussos Brothers' declarations were false, the only effect of that determination would be to vacate the Sale Orders' finding that O.F. and S.M.B. were good-faith purchasers under §363(m).

Defendants' argument suffers from two serious flaws. First, the evidence submitted by Johnson, Ryon, and Bell in support of the Sale Motion cannot be neatly isolated from the Roussos Brothers' declarations in the way that Defendants suggest. Judge Greenwald would have considered the evidence submitted by Johnson, Ryon, and Bell within the context of the Roussos Brothers' representations that the sale was at arms-length. If, as the Complaint alleges, that representation was false, Judge Greenwald would have been prevented from subjecting the Johnson, Ryon, and Bell evidence to the heightened scrutiny necessary for the review of insider sales. Insider sales are subject to "heightened scrutiny to the fairness of the value provided by the sale and the good faith of the parties in executing the transaction." *In re Family Christian, LLC*, 533 B.R. 600, 622 (Bankr. W.D. Mich. 2015). This is because insiders "usually have greater opportunities for … inequitable conduct." *Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators, Inc.)*, 926 F.2d 1458, 1465 (5th Cir. 1991). *See also In re Tidal Const. Co., Inc.*, 446 B.R. 620, 624 (Bankr. S.D. Ga. 2009) ("[E]ven when parties are completely forthright with the facts surrounding the transfer, § 363 sales to insiders are subject to a higher scrutiny because of the opportunity for abuse."); *Rickel & Associates v. Smith (In re Rickel & Associates, Inc.)*, 272 B.R. 74, 100 (Bankr. S.D.N.Y. 2002) (same); *In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 837 (Bankr. E.D. Va. 1997) (same). Therefore, the Roussos Brothers' alleged false declaration testimony would have infected Judge Greenwald's review of the Johnson, Ryon, and Bell evidence. For this reason, that evidence cannot be considered to be untainted by the alleged fraud, and consequently does not furnish an independent basis for upholding the Sale Order.[16]

Second, Defendants disregard the fact that the application of the doctrine of res judicata is altered in the context of a fraud on the court claim. As the Supreme Court explained, a court's power to vacate a judgment for fraud on the court is "reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross *to demand a departure*' from rigid adherence to the doctrine of res judicata." *United States v. Beggerly*, 524 U.S. 38, 46 (1998) (emphasis added). As stated above, according res judicata effect to an order obtained by fraud on the court would defeat the Court's ability to cleanse itself of fraud.

---

[16] Citing *Parke v. Raley*, 506 U.S. 20, 30 (1992), Defendants argue that the Sale Order is entitled to a presumption of correctness. *See Parke*, 506 U.S. at 30 ("[t]here is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears"). Here, the Complaint's allegations are sufficient to rebut the presumption of correctness attaching to the Sale Order.

### Even if the Sale Order Did Not Damage the Roussos Brothers' Estates the Complaint Would Still State a Claim for Fraud on the Court

Defendants incorrectly contend that the Trustee must allege that the Roussos Brothers' estates were damaged in order to state a claim for fraud on the court. A claim for fraud on the court does not require a showing that the opposing party suffered damages.

In *Dixon v. C.I.R.*, 316 F.3d 1041, 1046 (9th Cir. 2003), *as amended* (Mar. 18, 2003), the Ninth Circuit reversed the Tax Court's refusal to vacate a judgment for fraud on the court. In declining to vacate the judgment, the Tax Court reasoned that the fraud was harmless error. The Ninth Circuit held that the Tax Court's reasoning misapprehended the standard for fraud on the court:

> Here, the factual findings of the Tax Court support the conclusion that a fraud, plainly designed to corrupt the legitimacy of the truth-seeking process, was perpetrated on the trial court by McWade and Sims. The Tax Court, however, applied the wrong law when it imposed a requirement that taxpayers show prejudice as a result of the misconduct.
>
> Prejudice is not an element of fraud on the court. Fraud on the court occurs when the misconduct harms the integrity of the judicial process, *regardless of whether the opposing party is prejudiced.*

*Dixon*, 316 F.3d at 1046 (internal citations omitted and emphasis added).

Even if a sale not tainted by the alleged fraud would have failed to produce a surplus for the estate, the Trustee could nonetheless pursue the fraud on the court claim. As the *Dixon* court held, where misconduct harms the integrity of the judicial process, fraud on the court occurs "regardless of whether the opposing party is prejudiced." This concept has been restated in several Ninth Circuit decisions. *See, e.g.*, *United States v. Estate of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011) (in "determining whether fraud constitutes fraud on the court, the relevant inquiry is not whether fraudulent conduct 'prejudiced the opposing party,' but whether it '"harm[ed]"' the integrity of the judicial process'"); *Anand v. CITIC Corp.(In re Intermagnetics Am., Inc.)*, 926 F.2d 912, 917 (9th Cir. 1991) (the fraud on the court inquiry "focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process."); *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) (same); *United States v. Sierra Pac. Indus.*, 100 F. Supp. 3d 948, 956 (E.D. Cal. 2015) ("a showing of prejudice to the party seeking relief is not required" to demonstrate fraud on the court).

As the Court has previously explained, the alleged conduct of the Roussos Brothers, if proven to have taken place, inflicted egregious harm upon the integrity of the judicial process:

> The Roussos Brothers' false declarations made it impossible for the Bankruptcy Court to "perform in the usual manner its impartial task of adjudging" the sale motion. *Intermagnetics*, 926 F.2d at 912. The court's impartial review was fatally compromised by its lack of awareness of a crucial fact—that the purported arms-length sale was in reality a sale to entities controlled by insiders….
>
> "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances." *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288–89 (B.A.P. 9th Cir. 2005). As a result of the Roussos Brothers' false declarations, the court could not apply the heightened scrutiny necessary to insure that the insider sale yielded optimal value. By preventing the court from applying the correct legal standard, the Roussos Brothers' "perjury … was so

> fundamental that it undermined the workings of the adversary process itself." *Stonehill*, 660 F.3d at 445.
>
> *In re Roussos*, 541 B.R. 721, 729–30 (Bankr. C.D. Cal. 2015).
>
> The harm to the judicial process remains regardless of whether a completely above-board sale would not have yielded a surplus for the estate. The Court is required to use its inherent powers to rectify that harm. As the Ninth Circuit held: "When we conclude that the integrity of the judicial process has been harmed, however, and the fraud rises to the level of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decisions,' we not only can act, we should." *Dixon*, 316 F.3d at 1046.

<u>Rule 60(d) Permits the Court to Vacate the Sale Order and Require Turnover of the Properties</u>

Defendants argue that the relief requested in the Complaint—turnover of the Properties to the estate—is beyond the scope of Rule 60. The Court finds that the cases upon which Defendants rely in support of this proposition are inapposite.

Defendants cite *Ware v. Ware (In re Ware)*, 117 B.R. 1, 1 (Bankr. D.D.C. 1990) for the proposition that Rule 60 does not permit the Court to void a transfer of real property. However, in *Ware*, the orders attacked by the plaintiff dealt only with the distribution of the proceeds that were the subject of the adversary proceeding. Because the orders at issue did not address the properties the plaintiff sought to recover, the *Ware* court explained that the plaintiff was seeking to obtain additional affirmative relief. It denied the motion based on the fact that Rule 60 limits the court to altering the relief originally granted. By contrast, the Trustee here does not seek additional affirmative relief; he seeks only to undo the effects of the Sale Order entered by the Bankruptcy Court in 1994.

Defendants cite *United States v. One Toshiba Color Television*, 213 F.3d 147, 158 (3d Cir. 2000) for the proposition that Rule 60 does not entitle the Trustee to "relief in the form of a transfer of property." The statement Defendants quote from *Toshiba* is dicta—the court held that the issue of which Rule 60 remedies were available was not yet before it.

Defendants' reliance on *United States v. One Douglas A-26B Aircraft*, 626 F.2d 1372, 1377 (11th Cir. 1981) is similarly misguided. In *Douglas Aircraft*, an airplane owner obtained an order directing Customs to turn over his plane. Customs delayed nine months before turning over the aircraft in a state of disrepair. The owner filed a Rule 60 motion seeking to modify the judgment to require Customs to return the plane in "airworthy condition." The *Douglas Aircraft* court held that Rule 60 could not be used to expand the relief previously granted.

Again, here the Trustee does not seek to expand upon previously granted relief. Nor does the Trustee seek affirmative relief going beyond undoing the effects of the 1994 Sale Order.

<u>Unclean Hands and the Alter Ego Allegations Do Not Preclude Invocation of the *In Pari Delicto* Doctrine</u>

Although the Court finds that the *in pari delicto* doctrine does not apply to the Trustee's claims, certain of the arguments advanced by the Trustee for why the doctrine does not apply lack merit. For example, the Trustee argues that the equitable defense of *in pari delicto* cannot be asserted because of the unclean hands of the Roussos Brothers. However, by definition, the *in pari delicto* defense is always invoked by a party with unclean hands. The phrase *in pari delicto* is Latin for "in equal fault," meaning that whichever party that invokes the defense will have participated in the wrongdoing. As explained by the court in *Uecker v. Wells Fargo Capital Finance (In re Mortgage Fund '08 LLC)*, 527 B.R. 351, 366 (N.D. Cal. 2015), *in pari delicto*

applies "when a participant in illegal, fraudulent, or inequitable conduct seeks to recover *from another participant* in that conduct." That is, the other participant who invokes the *in pari delicto* defense has taken part in the illegal, fraudulent, or inequitable conduct.

Nor does the Trustee's allegation that the Roussos Brothers are alter egos of the Four Entities defeat application of the doctrine. In *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1143–44 (Cal. 2005), the court reversed the lower court's ruling sustaining a demurrer on the basis of *in pari delicto*. The *Casey* court held that the lower court erred because the complaint did not contain allegations sufficient to show that certain defendants acted as alter egos of other defendants. In other words, in order for the *in pari delicto* defense to be viable, it was necessary that the complaint contain alter ego allegations.

The Court will enter orders consistent with this Memorandum of Decision.

###

Date: September 22, 2016

Ernest M. Robles
United States Bankruptcy Judge