

**FILED & ENTERED**

**MAY 18 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** gonzalez **DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | | | |
|---|---|---|---|
| In re: | Harry Roussos, Debtor | Case Nos.: | 2:15-bk-21624-ER and 2:15-bk-21626-ER (jointly administered) |
| In re: | Theodosios Roussos, Debtor (jointly administered) | Adv. Nos.: | 2:15-ap-01404-ER and 2:15-ap-01406-ER |
| HOWARD M. EHRENBERG, Chapter 7 Trustee for the Estates of Harry Roussos and Theodosios Roussos,<br><br>                                                   Plaintiff<br><br>v.<br><br>HARRY ROUSSOS; THEODOSIOS ROUSSOS; O.F. ENTERPRISES, L.P.; LIRO, INC.; S.M.B. INVESTORS ASSOCIATES, L.P.; S.M.B. MANAGEMENT, INC.; CHRISTINE ROUSSOS; PAULA ROUSSOS; CHASE BANK N.A.; ONEWEST BANK N.A., and DOES 1 through 50,<br><br>                                                   Defendants | | **MEMORANDUM OF DECISION DENYING EMERGENCY MOTION FILED BY HARRY AND CHRISTINE ROUSSOS**<br><br><br><br><br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] | |

    The Court has reviewed the "Emergency Motion for Entry of an Order (1) Clarifying that Sarah Daly's Authority (as Managing Director of the Corporate Entities) to Borrow Funds and Encumber Any of the Properties to Secure Any Such Borrowings is Limited to Borrowings for a 'Permitted Use' or, in the Alternative, Enjoining Sarah Daly from Causing the Corporate Entities to Borrow any Funds and Encumber any Properties other than for a 'Permitted Use' and (2)

Authorizing and Directing the Chapter 7 Trustee to Remit Sale Proceeds Due to the Corporate Entities from the Sale of the San Vicente Property and Abbot Kinney Property to an Attorney-Client Trust Account of Shenson Law Group PC Pending Further Order of the Court" (the "Motion") [Adv. Doc. No. 447][1] filed by Harry and Christine Roussos ("Harry and Christine").[2] Pursuant to Federal Rule of Civil Procedure ("Civil Rule") 78(b) and Local Bankruptcy Rule ("LBR") 9013-1(j)(3), the Court finds this matter appropriate for disposition without a hearing. For the reasons set forth below, the Motion is DENIED.

**I. Facts**

This litigation involves the Chapter 7 Trustee's ("Trustee") attempt to recover, on behalf of the estates of Harry and Theodosios Roussos (the "Roussos Brothers"), a (1) 20-unit apartment building located at 2727–2741 Abbot Kinney Boulevard, Venice, CA (the "Abbot Kinney Property") and (2) a 30-unit building located at 153 San Vicente Boulevard, Santa Monica, CA (the "San Vicente Property") (collectively, the "Properties").

The Roussos Brothers commenced voluntary Chapter 11 petitions on June 14, 1993. The cases were jointly administered. On August 5, 1994, the Bankruptcy Court entered an order (the "1994 Sale Order") approving the sale of the Abbot Kinney Property to O.F. Enterprises, LP ("OF"), and approving the sale of the San Vicente Property to S.M.B. Investors Associates, LP ("SMB"). On October 19, 1994, the Roussos Brothers executed a grant deed conveying title to the Abbott Kinney Property to OF. On November 29, 1994, the Roussos Brothers executed a grant deed conveying title to the San Vicente Property to SMB. The Roussos Brothers' Chapter 11 cases were converted to Chapter 7 on May 2, 1995.[3] Both Harry and Theodosios received discharges on January 2, 1996.[4] The cases were closed on June 27, 2002.

On July 23, 2015, the cases were reopened upon the motion of the United States Trustee. On August 4, 2015, the Trustee filed two complaints, both of which seek to recover the Properties. The complaints are identical; one was filed in Harry's Chapter 7 case (Adv. No. 2:15-ap-01406-ER), the other in Theodosios' Chapter 7 case (Adv. No. 2:15-ap-01404-ER). Throughout the prosecution of this litigation, the motions filed and the orders entered in each adversary proceeding have been identical.[5]

---

[1] Identical pleadings and orders have been filed and entered in Adv. No. 2:15-ap-01404-ER and Adv. No. 2:15-ap-01406-ER. Unless otherwise indicated, all "Adv. Doc. No." citations are to Adv. No. 2:15-ap-01406-ER and all "Bankruptcy Doc. No." citations are to Case No. 2:15-bk-21624-ER.

[2] Given names are used to distinguish Harry and Christine Roussos from Theodosios Roussos and other members of the Roussos family who are also involved with or affected by this litigation. No disrespect is intended.

[3] *See* Doc. No. 34, Case No. 2:15-bk-21624-ER (order denying confirmation of Harry and Theodosios' joint consolidated second amended plan of reorganization and converting the cases to chapter 7); Doc. No. 12, Case No. 2:15-bk-21626-ER (same order in Theodosios' jointly-administered case).

[4] *See* Doc. No. 101, Case No. 2:15-bk-21624-ER (discharge of Harry); Doc. No. 48, Case No. 2:15-bk-21626-ER (discharge of Theodosios).

[5] For ease of reference, orders entered in the adversary proceedings are generally referred to in the singular.

The complaints were filed against Harry Roussos, Christine Roussos (Harry's spouse), Theodosios Roussos, Paula Roussos (Theodosios' spouse, who passed away in December 2016), OF, Liro, Inc. (the general partner of OF), SMB, SMB Management, Inc. (the general partner of SMB), Chase Bank, N.A., and CIT Bank, N.A. (formerly known as OneWest Bank, N.A.). The complaints alleged that the Roussos Brothers procured the 1994 Sale Order by committing fraud on the court, and sought to invalidate the 1994 Sale Order so that title to the Properties would be revested in the Roussos Brothers' bankruptcy estates. Specifically, the complaints alleged that to obtain the Sale Order, the Roussos Brothers submitted to the Bankruptcy Court declarations falsely stating that the sale was at arms length and that they had no interest in the purchaser entities OF and SMB, when in fact the Roussos Brothers secretly controlled OF and SMB.

On October 9, 2015, the Court imposed a temporary ninety-day stay of an arbitration action captioned *Harry Roussos and Christine Roussos v. Theodosios Roussos and Paula Roussos* (the "Arbitration"). *See* Bankruptcy Doc. No. 424. The Arbitration, which was being conducted by Judge Shook (the "Arbitrator"), involved a dispute over the management and ownership of the Properties. The Court stayed the Arbitration to the extent that it affected, directly or indirectly, title to or ownership of the Properties. On December 21, 2015, the Court entered a preliminary injunction (the "Arbitration Injunction") which continued indefinitely the previously-ordered stay of the Arbitration. *See* Adv. Doc. No. 92 (the "Preliminary Injunction Order"). Theodosios appealed the Preliminary Injunction Order; on June 27, 2016, the District Court affirmed the issuance of the preliminary injunction. *See* Adv. Doc. No. 318. Theodosios appealed the District Court's affirmance of the preliminary injunction to the Ninth Circuit. On January 4, 2017, after this Court had approved an agreement settling the litigation, the Ninth Circuit dismissed Theodosios' appeal of the Preliminary Injunction Order as moot. *See* Adv. Doc. No. 436.

On May 25, 2016, the Court entered an order permitting Judge Shook, who was conducting the Arbitration stayed by the Preliminary Injunction Order, to appoint a director to manage the affairs of OF, Liro, SMB, and SMB Management (collectively, the "Four Entities"). *See* Order Confirming that the Automatic Stay and the Court's Previous Order Enjoining the Arbitration Do Not Apply to Bar the Arbitrator from Appointing a Managing Director of S.M.B. Investors Associates, L.P.; S.M.B. Management, Inc.; O.F. Enterprises, Ltd.; and Liro, Inc. (the "Management Order") [Bankruptcy Doc. No. 551]. The Management Order provides in relevant part:

> The Court confirms that neither the Arbitration Injunction nor the automatic stay arising in the jointly-administered Chapter 7 bankruptcy cases of Harry and Theodosios Roussos bar the Arbitrator, Judge John H. Shook, Ret., from taking the following actions:
> 1) Appointing a managing director who will manage the affairs of S.M.B. Investors Associates, L.P.; S.M.B. Management, Inc.; O.F. Enterprises, Ltd.; and Liro, Inc. (the "Purchaser Entities"), and who will have the following responsibilities:
>    a) Hiring counsel to represent the Purchaser Entities in Adv. No. 2:15-ap-01406-ER and 2:15-ap-01404-ER (the "Adversary Proceedings") and in the jointly-administered Chapter 7 bankruptcy cases of Harry and Theodosios Roussos (Case Nos. 2:15-bk-21624-ER and 2:15-bk-21626-ER).

    b) Hiring counsel to represent Harry and Theodosios Roussos in the Adversary Proceedings and the related Chapter 7 bankruptcy cases.[6]

    c) For the purpose of paying counsel for the Purchaser Entities and for Theodosios and Harry Roussos in the Adversary Proceedings and the related Chapter 7 bankruptcy cases, borrowing funds against the following properties:
        i) 39 Paloma Avenue, Venice, CA 90291 ("Paloma Property");
        ii) 2209 Ocean Front Walk, Venice, CA 90291 ("Ocean Front Property");
        iii) 580 West E. Street, Colton, CA 92324 ("Colton Property").

    d) Paying new counsel for the Purchaser Entities and for Theodosios and Harry in the Adversary Proceedings and the related Chapter 7 cases from the net revenue of the Paloma, Ocean Front, and Colton properties. To the extent that any profits are paid to the record title owners of the San Vicente and Abbott Kinney Properties as provided in ¶2.G of the Order Continuing Hearing on Motion to Appoint Receiver, Etc. and Approving Oral Stipulation Re Property Management ("Property Management Order"),[7] such profits may be used to pay counsel; provided, however, that nothing in this order authorizes either the Arbitrator or the managing director to interfere with the Chosen Manager's[8] operation of the San Vicente and Abbott Kinney Properties; and further provided that the terms of the Property Management Order remain controlling with respect to the management and operation of the San Vicente and Abbott Kinney Properties.

Management Order at 1–2.

    On June 6, 2016, Judge Shook appointed Sarah Daly ("Ms. Daly") as the managing director of S.M.B. Management, Inc. and Liro, Inc. Judge Shook's order provides:

> PLEASE TAKE NOTICE that pursuant to the authority granted to me by all of the above-referenced parties in this binding arbitration, and in accordance with the attached Order of the Honorable Ernest M. Robles, United States Bankruptcy Judge, authorizing the Arbitrator to select a director for Liro, Inc. and S.M.B. Management, Inc., Sarah Daley is hereby appointed as the managing director to manage the affairs for Liro, Inc. and S.M.B. Management, Inc., effective immediately. A copy of the Order from Judge Robles dated May 25, 2016 authorizing the Arbitrator to select this new managing director and setting forth the scope of the new managing director's authority is attached hereto as Exhibit "A".

---

[6] At the hearing, proposed counsel for the Purchaser Entities said that he would not be retained to represent Theodosios Roussos. (The Motion, which was heard on an emergency basis, provided that the proposed counsel would represent Harry and Theodosios Roussos.) For the avoidance of confusion, the Court confirms that this order does not require the managing director to employ counsel for Harry and Theodosios Roussos; it merely provides that the managing director is not barred by the Arbitration Injunction or automatic stay from doing so.

[7] *See* Doc. No. 234, Adv. No. 2:15-ap-01406-ER and Doc. No. 249, Adv. No. 2:15-ap-01404-ER.

[8] The term "Chosen Manager" has the meaning set forth in the Property Management Order.

Order No. Twenty-Seven (27) Re: Appointment of Managing Director [for] S.M.B. Management, Inc. and Liro, Inc. (the "Order Appointing Managing Director") [Bankruptcy Doc. No. 571, Ex. B].

Liro is the general partner of O.F. and S.M.B. Management Inc. is the general partner of S.M.B. Investors Associates, so Judge Shook's Order Appointing Managing Director has the effect of appointing Ms. Daly as the managing director of all of the Four Entities.

On October 6, 2016, the Court approved a settlement agreement (the "Settlement Agreement") between the Trustee, on the one hand, and the Four Entities and Harry and Christine Roussos, the other hand (the Four Entities and Harry and Christine Roussos collectively, the "Settling Defendants"). *See* Order Approving Settlement Agreement (the "Settlement Approval Order") [Bankruptcy Doc. No. 591]. The Settlement Agreement authorizes the Trustee to sell the San Vicente Property and, if necessary, the Abbot Kinney Property in order to fund a settlement amount of $11 million (the "Settlement Amount"). The Settlement Agreement provides that if Harry and Christine take any action to remove Ms. Daly as director of the Four Entities, they will lose the benefit of certain releases provided for in the Settlement Agreement.

In approving the Settlement Agreement, the Court found that Ms. Daly had the authority to enter into the Settlement Agreement on behalf of the Four Entities:

> In his order appointing Ms. Daly as the managing director, Judge Shook incorporated by reference this Court's Management Order, explaining that the Management Order set forth the scope of Ms. Daly's authority. This Court has the ability to interpret its Management Order, and therefore determine whether Ms. Daly had authority to enter into the Settlement Agreement. The Management Order provides that Ms. Daly has the authority to "manage the affairs" of the Four Entities. The Management Order specifies that Ms. Daly's responsibilities include hiring and paying counsel to represent the Four Entities. The Court finds that the Management Order bestows upon Ms. Daly the authority to enter into the Settlement Agreement. Ms. Daly's authority to "manage the affairs" of the Four Entities necessarily includes the authority to settle litigation in which the Four Entities are involved. Ms. Daly's authority to settle is reinforced by the Management Order's provisions permitting Ms. Daly to hire counsel to represent the Four Entities. The authority to hire counsel would be ineffectual if it did not also include the authority to direct counsel to either settle or continue to defend against the Trustee's litigation.

Memorandum of Decision Granting Emergency Motion to Approve Settlement Agreement ("Memorandum of Decision") [Bankruptcy Doc. No. 590] at 10.

**Harry and Christine's Motion**

A dispute has arisen between Harry and Christine and Ms. Daly regarding the scope of Ms. Daly's responsibilities under the Order Appointing Managing Director. Harry and Christine allege that Ms. Daly has attempted to borrow funds against the Paloma, Ocean Front, and Colton Properties, for the purpose of paying her medical expenses or paying other expenses unrelated to her role as the managing director. Harry and Christine seek relief from this court because the Arbitration has concluded and Judge Shook no longer has jurisdiction. Harry and Christine seek an order providing that Ms. Daly may borrow funds against the Paloma, Ocean Front, and Colton Properties only for the purpose of paying counsel to represent the Four Entities, Theodosios Roussos, and Harry Roussos in the adversary proceedings and bankruptcy cases (the "Permitted

Borrowing"). Harry and Christine request that the order further provide that Ms. Daly may not borrow funds for the purpose of paying the legal fees of two law firms who have represented the Four Entities (Hill, Farrer & Burrill LLP and Lesnick, Prince & Pappas LLP). Harry and Christine do not explain why Ms. Daly should be barred from borrowing funds for the purpose of paying the legal bills of Hill, Farrer & Burrill LLP and Lesnick, Prince & Pappas LLP.

In the alternative, Harry and Christine seek a preliminary injunction preventing Ms. Daly from borrowing funds outside the scope of the Permitted Borrowing. Harry and Christine also seek an order directing the Trustee to remit proceeds due to the Four Entities from the sale of the San Vicente Property to the attorney-client trust account of Shenson Law Group PC, Harry and Christine's counsel. Harry and Christine argue that absent such an order, Ms. Daly is likely to misuse the sale proceeds for her personal benefit.

## II. Findings of Fact and Conclusions of Law

The Court declines to adopt the narrow construction of the Management Order advocated by Harry and Christine. The Management Order provides that the managing director "will manage the affairs" of the Four Entities. It then provides that the managing director will have certain responsibilities, and sets forth a list of those responsibilities. But nothing in the Management Order provides that the managing director's authority is limited to the specific responsibilities described in the order. The narrow construction advocated by Harry and Christine renders certain of the Management Order's language superfluous. If the managing director had authority only to perform the responsibilities that were specifically described therein, the more generalized grant of authority to "manage the affairs" of the Four Entities would have been unnecessary. That is, rather than stating that Judge Shook was not barred from "[a]ppointing a managing director who will manage the affairs of [the Four Entities], and who will have the following responsibilities …," the Management Order could have simply stated that Judge Shook was not barred from "[a]ppointing a manager director who will have the following responsibilities …."

Harry and Christine's construction is also inconsistent with the interpretation the Court has previously accorded the Management Order. For example, in approving the Settlement Agreement, the Court found that the Management Order bestowed upon Ms. Daly the authority to settle these actions, even though there is no provision in the Management Order specifically stating that Ms. Daly has settlement authority.

The evidence furnished in support of the Motion does not lend support to Harry and Christine's contention that there is an imminent risk that Ms. Daly is likely to loot the Four Entitles for her personal gain. Harry and Christine place substantial weight upon the fact that Ms. Daly demanded that her management fee be increased from $3,000 to $5,000 per month. The fact that Ms. Daly made this demand and exerted pressure to have it met does not suggest that Ms. Daly is likely to start misappropriating the Four Entities' funds. In the Court's view, a management fee of $5,000 per month is not unreasonable given the complexities of managing the Four Entities and the acrimonious relationship between the various stakeholders.

Harry and Christine also point to Ms. Daly's unsuccessful attempt to borrow $320,000 against the Colton Property as evidence that she is likely to loot the Four Entities for her personal benefit. In support of this contention, Harry and Christine offer the declaration testimony of Stuart Johnson. Mr. Johnson testifies that he was advised by Michael Christl of California Private Lenders that Ms. Daly was attempting to borrow $320,000 against the Colton Property. Johnson Decl. at ¶6. For the purpose of establishing that Ms. Daly attempted to borrow $320,000, Mr. Johnson's testimony is inadmissible hearsay. Even if Harry and Christine could

establish that Ms. Daly had attempted to borrow $320,000, that does not show that Ms. Daly had the intent to misappropriate the funds. Substantial legal fees have been incurred by Hill, Farrer & Burrill LLP and Lesnick, Prince & Pappas LLP, two law firms who have provided representation to the Four Entities. The record does not reflect the outstanding amount of fees owed to these firms. However, at the time Hill, Farrer & Burrill withdrew from representation, it had incurred fees of $249,000, of which $219,000 remained unpaid. *See* Decl. of Daniel J. McCarthy at ¶¶ 8–9 [Adv. Doc. No. 382]. Ms. Daly's attempted borrowing could have been intended to pay these outstanding legal bills. In addition, the Four Entities may be required to incur substantial additional legal fees to protect their interests in the future. Two actions are presently pending in the Los Angeles Superior Court with respect to the final decision made by Judge Shook in the Arbitration. *See* Case Nos. BS168321 and BS165997. Both actions could affect the legal rights of the Four Entities. In sum, Harry and Christine's contention that there is no need for the Four Entities to borrow and therefore that any attempt to borrow must be for nefarious purposes is not supported by the record.

Further, it appears that the Motion was substantially motivated by Harry and Christine's desire to prevent funds from being borrowed for the purpose of paying the outstanding fees of Hill, Farrer & Burrill LLP and Lesnick, Prince & Pappas LLP. The Motion states that Ms. Daly should not be permitted to borrow funds to pay those law firms. *See* Motion at 4 n. 7 ("For the avoidance of any doubt, [a] 'Permitted Use' [for borrowed funds] does NOT INCLUDE payment of legal fees and expenses to Hill, Farrer & Burrill LLP and Lesnick, Prince & Pappas LLP").

The e-mails proffered by Harry and Christine in support of the Motion do not support the contention that Ms. Daly is likely to embezzle funds from the Four Entities. The e-mails show that there has been a complete communications breakdown between Ms. Daly, Harry, and Harry's counsel, and that the relationship between these parties has become poisoned by mistrust. In one particularly angry, garbled, and largely incoherent e-mail, Ms. Daly alleges that she is entitled to restitution of $4 million against Mr. Johnson, one of Harry's attorneys. Contrary to Harry and Christine's suggestion, this e-mail does not demonstrate that Ms. Daly is planning to embezzle funds from the Four Entities. The e-mail was sent at 4:12 in the morning, is full of spelling errors, has the subject line "I am shutting down," states "I will not survive another minute," and is filled with recriminations against various attorneys involved in these matters. The e-mail shows Ms. Daly's distraught emotional state at the time, not that she is conniving to commit embezzlement.

Harry and Christine request that the monies that the Four Entities are entitled to receive in connection with the sale of the San Vicente Property be deposited into the attorney-client trust account of Harry and Christine's counsel. Based on the insufficient evidentiary showing that Ms. Daly is likely to embezzle the Four Entities' funds, that request is denied.

Harry and Christine are not entitled to injunctive relief against Ms. Daly. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). The movant must demonstrate, "by a

clear showing," that he is entitled to a preliminary injunction. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997).

First, for the reasons discussed above, Harry and Christine have not shown that they are likely to succeed on the merits, or even that there are serious questions going to the merits. Second, Harry and Christine have failed to show irreparable harm. Any harm Harry and Christine suffered in the event that Ms. Daly did misappropriate the Four Entities' funds could be remedied through an award of money damages against Ms. Daly. As the Ninth Circuit has held, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Third, the balance of the hardships does not weigh in Harry and Christine's favor, as the injunctive relief Harry and Christine seek would unduly circumscribe Ms. Daly's ability to manage the Four Entities. Finally, because the public interest does not weigh for or against the issuance of a preliminary injunctive, the Court does not consider this factor. *See Rinard v. Positive Investments (In re Rinard)*, 451 B.R. 12, 23 (Bankr. C.D. Cal. 2011).

In closing, the Court finds it appropriate to advise Ms. Daly that as the managing director of SMB Management and Liro, she is subject to fiduciary duties or care and loyalty that are not to be taken lightly. Breach of these fiduciary duties can result in substantial liability. Cal. Corp. Code §309(a) (West 2017) provides: "A director shall perform the duties of a director … in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances." As the California Supreme Court has explained:

> Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests…. A public policy, existing through the years, derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his [or her] duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his [or her] skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers.

*Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345, 411 P.2d 921, 934–35 (1966).

Based upon the foregoing, the Motion is DENIED. The Court will enter an order consistent with this Memorandum of Decision.

###

Date: May 18, 2017

Ernest M. Robles
United States Bankruptcy Judge